(February 2, 1993)

■ The People of the State of New York, Respondent, v Mark Franklin, Appellant.—Judgment, Supreme Court, Bronx County (Arlene Silverman, J.), rendered March 7, 1990, convicting defendant, after a jury trial, of criminal possession of a controlled substance in the third degree, and sentencing him to an indeterminate prison term of 6 to 12 years, unanimously reversed, on the law, and the matter remanded for a new trial.

Two police officers testified at trial that, while conducting a "vertical patrol" of an apartment building on June 1, 1988, they observed the defendant standing in the open doorway of an apartment. Lined up in front of the doorway were four or five other people. The officers stated that at their approach, the defendant dropped a paper bag he had been holding and ran inside the apartment where he was pursued and arrested. The bag which the officers claimed to have seen the defendant drop contained many vials of cocaine.

In addition to the above-described testimony, the People were permitted, over the defendant's objection, to introduce three pages from a small spiral notebook seized from the defendant at the time of his arrest. These pages bearing the date May 28, 1988, contained numerous handwritten entries in which the words "coke," "dope" and "slugger" appeared along with corresponding dollar amounts and tally marks. The trial court admitted this evidence upon the ground that it was relevant to establish that the defendant had possessed the cocaine in the bag knowingly. We, however, cannot agree that the evidence was relevant to any material issue in the case.

Had the jury credited the police officers' testimony, the case against the defendant for possession of a controlled substance

would have been overwhelmingly established. The jury could have, and undoubtedly would have, inferred from the fact of the defendant's possession of the paper bag full of contraband that he knew what it was he possessed (see, People v Reisman, 29 NY2d 278, 285). Indeed, there was no viable defense that the defendant innocently possessed the flimsy paper bag containing over 100 vials of cocaine. The theory of the defense then, was not that the possession had been innocent, but that it had never occurred—that it was not the defendant but one of the other people congregated in front of the apartment who had held and, thereafter, dropped the bag of contraband. Accordingly, the only real factual issue presented for the jury's determination was whether the police had, as they testified, seen the defendant in possession of the bag. Plainly, the disputed evidence had no permissible bearing on that issue.

There was nothing in the notepad pages or in any of the other trial evidence which explained what, if any, connection the notations from the notepad bore to the 116 vials of cocaine the defendant was charged with possessing. Only the sheerest speculation would have enabled the jury to conclude that the "coke" notation in the entry, apparently made days before the possessory offense charged, referred to the cocaine allegedly dropped by the defendant just prior to his arrest. The mere fact that defendant had on his person a pad containing unexplained references to "coke" was not even remotely probative of whether he possessed cocaine on the specific occasion for which he was charged. By contrast, in People v Satiro (72 NY2d 821), cited by the People, the notebook entries admitted as probative on the issue of whether the defendant therein had dominion and control over certain contraband, were found together with the contraband in the defendant's room rendering the inference that the notebook entries, written in the defendant's hand, did in fact refer to and indicate the defendant's control over the subject contraband, natural, if not compelling.

While not probative of the specific possessory offense charged, the notepad entries in the present case were undoubtedly suggestive of some perhaps extensive involvement by the defendant in the drug trade. It is not difficult to believe a man guilty of possessing contraband if there is some basis to suppose that it is his business to deal in it. But the law does not permit the proof of one crime by evidence of the commission of others, except insofar as the crime charged—as distinguished from a mere propensity toward the commission of

similar crimes—is in some measure established by the evidence of other wrongdoing *(People v Alvino,* 71 NY2d 233, 241). Here, the admission of the disputed evidence constituted little more than an invitation to convict the defendant based upon the speculation that he was a drug dealer who, in such capacity, would have been a likely possessor of drugs. Indeed, it was precisely such speculation as to the defendant's propensities that was encouraged by the prosecutor who urged in summation, "Look at the pages you're going to get from the small little spiral pad he had on him. Look at what it says. Draw your own conclusions as to whether or not that indicates that these blue tops belonged to Mr. Franklin." And, contrary to the People's contention on appeal, there is every indication in the record that the jury did in fact "look at the pages" and draw from them precisely the sort of conclusions that the law forbids.

There was in the end no permissible application for the disputed evidence; it was unnecessary and, therefore, inadmissible for the purpose for which it was received *(see, People v Alvino, supra,* at 242; *People v Crandall,* 67 NY2d 111) and irrelevant for the purpose for which it was ultimately used, and in either case highly prejudicial. It simply cannot be said that the admission of evidence indicative of extensive drug dealing by the defendant would not have affected the jury's disposition of the single offense with which he had actually been charged, which was not that he had sold, but simply that he had possessed cocaine. Concur—Murphy, P. J., Ellerin, Wallach and Ross, JJ.