(November 29, 2007)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES BUSKEY, Appellant. [846 NYS2d 701]—

Spain, J. Appeal from a judgment of the County Court of Clinton County (McGill, J.), rendered November 10, 2005, upon a verdict convicting defendant of the crimes of sexual abuse in the first degree and endangering the welfare of a child (three counts).

Defendant's convictions are based on three instances where he allegedly made sexual advances toward the 13-year-old victim. The record evidence establishes that defendant is a man in his mid-50s who regularly "h[u]ng out" with young teenagers, supplying them with cigarettes and welcoming them into the trailer where he resided. In January 2005, the victim and two of her young teenage friends went to defendant's residence with plans to spend the night. The victim described the first incident as occurring in the afternoon, while she was playing cards with defendant—nicknamed "Dad" by his young guests—and her friends. Noticing a stain on her shirt, she got up to go and change. The victim testified that when she entered the hallway, defendant approached her from behind, grabbed her wrist, backed her up against the wall and kissed her, open mouthed, on the mouth. He then placed his hand between her legs and rubbed her through her clothing. When one of defendant's sons entered the hallway, defendant let the victim go. The victim immediately told her two friends what had transpired, one of whom testified at trial and confirmed that the victim, appearing shocked, had come in and told them that "Dad" had just kissed her; that "he stuck his tongue down [her] throat."

The second incident described by the victim occurred later that evening or early the following morning after she had fallen asleep on the couch in the living room where one of her friends and defendant were also sleeping. She awoke to find defendant sitting next to her on the couch, rubbing her thigh. He then kissed her and proceeded to pull down her pajama pants and underwear, and to rub her genitalia with his hand. He ceased after the victim repeatedly told him to stop. The victim then got up, left the living room and went back to sleep on the floor of defendant's son's room.

The third incident occurred some weeks later when the victim and some of her friends decided to go to a roller skating rink; they called defendant and requested a ride. During the drive, the victim sat in the front seat between defendant and one of his sons. The victim testified that defendant placed his hand on her inner thigh, and evidence was admitted that, during the course of the 15 minute drive, he moved his hand up along her thigh until he was touching her between her legs. Two of her friends, riding in the back seat, corroborated the victim's testimony. Shortly thereafter, one of the victim's friends reported this incident, and the two prior incidents, to the victim's mother, who contacted the police.

Defendant was subsequently indicted on two counts of sexual

abuse in the first degree, one count of sexual abuse in the second degree and three counts of endangering the welfare of a child. After a pretrial *Molineux/Ventimiglia* hearing, County Court ruled, among other things, that the People—as part of their direct case—could introduce evidence that defendant had made sexual advances toward three other young teenage girls as evidence of a common scheme or plan and to demonstrate lack of mistake and motive. Defendant did not testify at the trial and the jury convicted him of one count of sexual abuse in the first degree based upon the incident in the hallway, and three counts of endangering the welfare of a child. He was sentenced to an aggregate prison term of seven years, with five years of postrelease supervision. Defendant now appeals.

Turning to defendant's arguments which, if meritorious, would entitle him to dismissal of the first count of the indictment—charging sexual abuse in the first degree based upon the incident in the hallway—we note that defendant failed to preserve his challenge to the legal sufficiency of the evidence with respect to that conviction as his limited motion to dismiss at trial did not address that count (*see People v Alvarez*, 38 AD3d 930, 934 [2007], *lv denied* 8 NY3d 981 [2007]). Further, we find unpersuasive defendant's argument on appeal that the sexual abuse in the first degree conviction was against the weight of the record evidence.

We do, however, conclude that the evidence of uncharged crimes against the three other teenagers was improperly introduced at trial entitling defendant to a new trial. "Evidence of similar uncharged crimes has probative value, but as a general rule it is excluded for policy reasons because it may induce the jury to base a finding of guilt on collateral matters or to convict a defendant because of his past" (*People v Alvino*, 71 NY2d 233, 241 [1987] [citations omitted]; *see People v Vargas*, 88 NY2d 856, 858 [1996]; *People v McKinney*, 24 NY2d 180, 184 [1969]). Although recognized exceptions exist permitting the admission of prior uncharged crimes under certain circumstances (*see People v Molineux*, 168 NY 264, 293 [1901]), even where, as a matter of law, the evidence of other crimes is probative of a legally relevant and material issue, "admissibility turns on the discretionary balancing of the probative value and the need for the evidence against the potential for delay, surprise and prejudice" (*People v Alvino*, 71 NY2d at 242).

Over defendant's objection, the People were permitted to introduce evidence, not as rebuttal evidence but on their direct case, that defendant had touched and kissed another young teenage girl on several occasions, had kissed yet another young

girl and attempted to kiss a third, all at his home where, like the victim, the girls had come to socialize with friends. The evidence was admitted as probative of a common scheme or plan, lack of mistake and motive. The common scheme or plan exception acknowledged in *Molineux* recognizes that evidence of uncharged crimes may be relevant "to establish a scheme 'embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others' " (*People v Simmons*, 29 AD3d 1219, 1220 [2006], quoting *People v Molineux*, 168 NY at 293). Notably, "a *modus operandi* alone is not a common scheme; it is only a repetitive pattern" (*People v Fiore*, 34 NY2d 81, 87 [1974]; *see People v Toland*, 284 AD2d 798, 803-804 [2001] [modus operandi evidence may be admissible where necessary to establish identity of the perpetrator], *lv denied* 96 NY2d 942 [2001]). Moreover, "it is impermissible to offer proof of uncharged crimes committed pursuant to a common plan unless the uncharged crimes support the inference that there exists a single inseparable plan encompassing both the charged and uncharged crimes, typically, but not exclusively, embracing uncharged crimes committed in order to effect the primary crime for which the accused has been indicted" (*People v Fiore*, 34 NY2d at 85).

Here, the evidence that defendant made advances to other girls in the same manner as the conduct for which he was charged establishes only a "repetitive pattern," not a common scheme or plan within the meaning of the *Molineux* exception. Proof that defendant kissed other young invitees to his home in no way establishes that he committed the acts charged here (*see People v Hudy*, 73 NY2d 40, 54-56 [1988], *abrogated on other grounds by Carmell v Texas*, 529 US 513 [2000]; *cf. People v Athanasatos*, 40 AD3d 1263, 1265 [2007] [prior conviction involving nearly identical larceny admissible to show individual manifestations of a general plan], *lv denied* 9 NY3d 872 [2007]). Distinguishable are those cases where we have held prior uncharged sexual crimes admissible to demonstrate forcible compulsion and provide necessary background regarding a defendant's relationship with the victim, i.e., to explain the victim's behavior and her submission to abuse (*see People v Higgins*, 12 AD3d 775, 778 [2004], *lv denied* 4 NY3d 764 [2005]; *People v Laviolette*, 307 AD2d 541, 542-543 [2003], *lv denied* 100 NY2d 643 [2003]; *People v Greene*, 306 AD2d 639, 642 [2003], *lv denied* 100 NY2d 594 [2003]; *People v Watson*, 281 AD2d 691, 693-694 [2001], *lv denied* 96 NY2d 925 [2001]).

Indeed, here, no evidence was proffered that the victim was aware of defendant's alleged conduct toward the other girls;

thus, it could not be relevant to her mental state or behavior. The only probative value of the evidence—"that, because defendant had engaged in sexual misconduct with others, he was likely to have committed the acts charged"—is precisely the type of propensity evidence which is prohibited (*People v Vargas*, 88 NY2d at 858; *see People v Hudy*, 73 NY2d at 56 [improper to introduce evidence of prior sexual misconduct when it tended to show only that "if defendant did it once . . . he would do it again"]; *People v Lewis*, 69 NY2d 321, 325 [1987] [rejecting testimony of prior acts to prove "amorous design"]; *cf. People v Paige*, 289 AD2d 872, 874 [2001] [evidence properly admitted that the defendant supplied youths with alcohol and drugs admissible to demonstrate that the prior bad acts were part of a plan to commit sexual crimes against minors], *lv denied* 97 NY2d 759 [2002]).

Nor, on this record, was the evidence of uncharged crimes necessary to show intent or absence of mistake. The evidence was introduced as part of the People's case-in-chief, and not in response to any specific defense theory (*cf. People v De Vito*, 21 AD3d 696, 699 [2005]). Just as "evidence of prior misconduct to prove intent is unnecessary where intent may be easily inferred from the commission of the act itself" (*People v Vargas*, 88 NY2d at 858), here defendant's motive and purpose can be readily gleaned from the actions for which he was charged. Thus, any probative value to the evidence that defendant committed such similar crimes against three other victims is far outweighed by its obvious prejudice to defendant and there is a real danger that the jury used this evidence to draw the impermissible inference (*see People v Jackson*, 136 AD2d 866, 866 [1988]).

Further, we cannot say on this record that the evidence that three other young girls were assaulted in the same manner as the victim is harmless error (*see People v Hudy*, 73 NY2d at 56; *People v Lewis*, 69 NY2d at 328; *People v Singh*, 186 AD2d 285, 288 [1992]; *People v Jackson*, 136 AD2d at 866-867). Indeed, given the critical nature of the victim's testimony and her credibility to the People's case, defendant's alleged assaults against three other girls tended only to prove defendant's criminal propensity and threatened to "eclipse the reason for the trial, i.e., the crimes with which defendant is charged" (*People v Gorghan*, 13 AD3d 908, 911 [2004], *lv dismissed* 4 NY3d 798 [2005]).

Defendant's remaining arguments on appeal are rendered academic by our holding that he is entitled to a new trial.

Mercure, J.P., Carpinello, Mugglin and Kane, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Clinton County for a new trial.