■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NASIN ARAFET, Appellant. [863 NYS2d 512]—

---

Kavanagh, J. Appeal from a judgment of the County Court of Schenectady County (Hoye, J.), rendered November 7, 2005, upon a verdict convicting defendant of the crimes of grand larceny in the first degree and criminal possession of stolen property in the first degree.

In July 2006, the trailer portion of a large tractor trailer containing Xerox copy machines, printers and accessory equipment worth more than $1 million was stolen from a tandem trailer parking lot in the Town of Rotterdam, Schenectady County, and driven south on the New York State Thruway. Two days after the theft, the trailer was found, absent its cargo, abandoned on a public roadway in northern New Jersey. Defendant was subsequently charged with its theft. At trial, the People presented as evidence a Thruway toll ticket bearing what was identified as defendant's fingerprint and showing that a five-axle vehicle had traveled from exit 25A to exit 15 at the relevant time on the day in question. The People also introduced cellular telephone records showing that one of defendant's cellular telephones traveled from New Jersey to the Albany area and returned on the morning in question, and that the phone was used by someone during the return trip to contact Nelson Quintanilla and a warehouse leased by a company owned by Jose Gotay, both of whom had been previously charged or convicted of stealing trailers and receiving stolen goods. The trailer was found abandoned within 20 miles of Gotay's warehouse and defendant's home. The jury found defendant guilty of grand larceny in the first degree and criminal possession of stolen property in the first degree. Defendant now appeals and we affirm.

The crucial question upon which the jury was urged to focus its attention was whether the People proved beyond a reasonable doubt that defendant was the individual who stole the trailer, drove it to New Jersey, unloaded its cargo and abandoned it. The proof submitted on this issue was entirely circumstantial

and the People's need for corroboration was manifest. In that regard, the People sought to present evidence of defendant's involvement in prior thefts of trailers containing large quantities of bulk merchandise. County Court, in a measured ruling, allowed evidence of some, but not all, of these prior bad acts as described by the People in their proffer, and the court did so only after it conducted a thorough review of all of the attendant circumstances (*see People v Alvino*, 71 NY2d 233, 247 [1987]). The court also gave the jury limiting instructions when this evidence was received at trial that clearly and correctly detailed how it could be used in its deliberations (*see People v Till*, 87 NY2d 835, 837 [1995]; *People v Doyle*, 48 AD3d 961, 964 [2008]).

The evidence admitted specifically described the circumstances surrounding a total of four other hijackings, two of which did not involve defendant and focused entirely on the activities of defendant's two alleged accomplices in this hijacking, Quintanilla and Gotay. By this proof, the People sought to establish that both Gotay and Quintanilla were intimately involved in the criminal enterprise of hijacking trailers and the theft of their cargo. It was not alleged that defendant was involved in any of these crimes, therefore there is no issue as to a *Molineux* or *Ventimiglia* violation. "[E]vidence is relevant if it has any tendency in reason to prove any material fact" (*People v Mateo*, 2 NY3d 383, 424 [2004] [internal quotation marks and citations omitted]), but to be admissible its probative value must not be "substantially outweighed by the potential for prejudice" (*id.* at 425). This evidence was properly admitted to prove a material fact—it put into context the significance of telephone records which suggested that the hijacker had been in contact with both men prior to, during and immediately after the trailer in question had been hijacked and its cargo stolen (*see People v Montanez*, 41 NY2d 53, 58 [1976]; *People v Mitchell*, 40 AD2d 117, 119 [1972]; *see also People v Resek*, 3 NY3d 385, 389 [2004]).

With respect to County Court's ruling allowing the People to use evidence of prior uncharged hijackings of trailers that involved defendant, as a general rule, evidence of a defendant's prior bad acts and criminal convictions cannot be introduced as part of the People's case-in-chief to show criminal propensity (*see People v Blair*, 90 NY2d 1003, 1004-1005 [1997]; *People v Alvino*, 71 NY2d at 241-242; *People v Ventimiglia*, 52 NY2d 350, 359 [1981]). Such evidence may be permitted, however, if it falls within one of the general rule's exceptions, such as where it is used to prove an identical or unique modus operandi or the existence of a common scheme or plan (*see People v Rojas*, 97

NY2d 32, 37 [2001]; *People v Alvino*, 71 NY2d at 242; *see generally People v Molineux*, 168 NY 264, 295 [1901]). Modus operandi evidence may be admissible to establish identity if its probative value outweighs the risk of prejudice to defendant (*see People v Resek*, 3 NY3d at 389) and where, as here, the identity of the perpetrator has not been conclusively established and the case relies heavily on circumstantial evidence (*see People v Toland*, 284 AD2d 798, 803-804 [2001], *lv denied* 96 NY2d 942 [2001]). The evidence of the uncharged crime, however, must demonstrate a unique and distinctive modus operandi so as to make the evidence highly probative of identity (*see People v Robinson*, 68 NY2d 541, 547-548 [1986]; *People v Beam*, 57 NY2d 241, 251 [1982]; *People v Condon*, 26 NY2d 139, 144 [1970]). "The uniqueness requirement does not mandate a ritualistic pattern, but the crime pattern as a whole must be distinctive" (*People v Latimer*, 24 AD3d 807, 809 [2005], *lv denied* 6 NY3d 849 [2006] [citation omitted]; *see People v Toland*, 284 AD2d at 803]).

While the hijacking of a large tractor trailer may be considered by some a "common occurrence," the fact is that the theft of such a large vehicle and the disposition of its cargo is a complicated criminal undertaking requiring numerous accomplices, extensive planning and significant coordination. Defendant's prior participation in such extraordinary criminal behavior under the circumstances presented is relevant to determine whether he was in fact the perpetrator of the hijacking at issue (*see People v Allweiss*, 48 NY2d 40, 48-49 [1979]).

In one of the two uncharged crimes in which it is claimed that defendant was a participant, defendant is alleged to have admitted being recruited by Quintanilla to hijack a trailer and deliver its cargo to a predetermined location in northern New Jersey. After defendant agreed to participate, Quintanilla, in July 1996, made arrangements for defendant and two others to hijack two trailers from a CSX truck depot located in North Bergen, New Jersey. Entrance to the facility was gained through the cooperation of a CSX employee who identified the trailers to be taken and provided access to those vehicles so that defendant and his accomplices could hijack them. Two trailers containing a large quantity of toys and televisions were taken by defendant and his accomplices from the depot to a location in northern New Jersey where Quintanilla had made arrangements to unload the cargo and secrete it until it could be sold. After the trailers were unloaded, they were abandoned on the roadside of a public highway in northern New Jersey.

The crime that defendant is charged with here has the same

distinctive and unique modus operandi. The trailer containing the Xerox copy machines and other equipment was stolen from the tandem trailer parking lot in the Town of Rotterdam, Schenectady County, and driven south on the Thruway. Throughout this trip, the hijacker was allegedly in telephone contact with both Quintanilla and Gotay. Two days after the theft, the trailer was found, absent its cargo, abandoned on a public roadway in northern New Jersey. From these facts, it is fair to assume that more than one person was involved in the plan to hijack this trailer, the perpetrators of this hijacking had inside information that led them to the trailer in question, and the hijacker had access to resources that allowed for the efficient and covert disposition of a large quantity of bulk merchandise soon after it had been stolen. In short, the modus operandi employed by the perpetrators of this hijacking is strikingly similar to that used by Quintanilla and defendant in the uncharged hijacking.

Equally important, a *signature circumstance* common to both the charged and this uncharged hijacking was the intimate involvement of Quintanilla. Simply put, since the hijacker's identification was the only issue to be decided at trial, and the People presented credible evidence to the effect that the hijacker had been in contact with Quintanilla while this crime was being committed, defendant's prior involvement with Quintanilla in such a criminal undertaking was obviously relevant in establishing that he was indeed the person who stole the trailer and drove it to northern New Jersey. The probative value of such evidence, given the level of Quintanilla's alleged involvement in both the charged and uncharged hijacking, is self-evident and overwhelms any prejudice that might otherwise result from its admission (*see People v Athanasatos*, 40 AD3d 1263, 1265 [2007], *lv denied* 9 NY3d 872 [2007]). Clearly, such evidence, given all of the attendant circumstances, was relevant in establishing defendant's identity as the hijacker and was properly admitted at trial (*see People v Mateo*, 93 NY2d 327, 332 [1999]; *see also People v Toland*, 284 AD2d at 803-804; *People v Keller*, 215 AD2d 502, 502-503 [1995], *lv denied* 87 NY2d 904 [1995]).

A closer question exists as to the admission of evidence of a second uncharged hijacking that occurred in April 2000 and involved defendant and two accomplices, neither of whom has been linked to the instant crime. All three men were apprehended by the police as they were unloading a large cargo of stolen bulk merchandise from a trailer they had hijacked earlier that evening from a storage facility in Secaucus, New Jersey. After his arrest, the police noted that defendant had the serial

numbers of the stolen trailer written on his hand. Again, the pattern employed in this theft was strikingly similar to that used in the instant case. This hijacking involved not only more than one perpetrator, but it is clear that, prior to its commission, the perpetrators had access to information identifying the exact trailer to be stolen. In addition, judging from the circumstances under which they were apprehended, prior arrangements had been made that allowed the perpetrators to secrete this merchandise in a location in northern New Jersey until it could be sold. Except for the intervention of the police, the manner in which this highly specialized crime was committed and that of the instant crime were identical and, when viewed as a whole, the two constituted distinct, unique criminal undertakings (*see People v Keller*, 215 AD2d at 502-503).

Even if one were to conclude that the admission of evidence of the second uncharged hijacking was error, it should not result in a reversal. When viewed against the weight of all of the other evidence that was properly admitted at trial—including defendant's prior involvement in this form of criminal activity with Quintanilla—such error, under the circumstances, is harmless and, by itself, is not grounds for reversing this conviction (*see People v Jackson*, 8 NY3d 869, 870 [2007]).

In sum, the modus operandi employed in the uncharged crimes and the instant crime are the same. Each involve the commission of a specialized crime, and the parallels that exist among them in terms of their planning and execution are striking. Given the obvious relevance that such evidence has to the issue of defendant's identification as the perpetrator of this hijacking, County Court properly admitted evidence of these uncharged crimes.

Kane and Malone Jr., JJ., concur.

Rose, J. (dissenting). We respectfully dissent. In its *Ventimiglia/Molineux* ruling, County Court relied on two exceptions to the general rule that preclude admission of a defendant's similar uncharged crimes, namely, where such evidence establishes the identity of the perpetrator by his or her unique modus operandi and where it shows a common scheme or plan (*see e.g. People v Rojas*, 97 NY2d 32, 37 nn 3, 4 [2001]). Notably, the majority considers only the question of whether there was a sufficiently unique modus operandi, no doubt because the evidence clearly fails "to establish a scheme 'embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others' " (*People v Simmons*, 29 AD3d 1219, 1220 [2006], quoting *People v Molineux*, 168 NY 264, 293 [1901]; *see People v Buskey*, 45 AD3d 1170, 1173 [2007]). Even

under the modus operandi exception, however, defendant's past crimes were not properly admitted.

While the theft of a trailer and the disposal of a large quantity of merchandise may be a complicated undertaking, there was no evidence here that it is such an extraordinary crime that its mere occurrence reflects a unique and distinctive modus operandi identifying defendant as the perpetrator. A careful comparison of the prior thefts with the instant theft reveals no unique pattern in the type of merchandise stolen, no common owner of the trailers or their contents, no unique means of gaining access to the trailers, no common or similar location of the trailers when they were stolen, no unique means or route for transporting the trailers, and no common place or mode of disposal of the trailers' contents. In addition, there was testimony at trial that it is a "fairly common occurrence" for people to steal trailer loads of merchandise and for empty trailers to be found abandoned along the roadside in certain areas of northern New Jersey.

Here, the only features that are truly the same in the charged and uncharged crimes are the typical ones, namely, the use of a tractor to haul away a trailer containing merchandise and the abandonment of the empty trailer along the roadside in northern New Jersey. Although there also is evidence that, on the day of the charged theft, defendant may have communicated with Nelson Quintanilla, his accomplice in two uncharged thefts, and Jose Gotay, who was not shown to have any prior relationship with defendant, this evidence showed only that very brief calls were placed from one of defendant's cell phones to Quintanilla's cell phone in Florida and to Gotay's warehouse in New Jersey. Since the People presented no evidence as to the content of these calls or the actual roles, if any, played by Quintanilla or Gotay in the charged theft, the evidence of their involvement in the charged theft is significantly different than Quintanilla's extensive involvement in the uncharged thefts. The lack of proof of their active involvement in the charged crime distinguishes this case from those in which evidence of an accomplice's criminal relationship with a defendant has been held admissible to identify the defendant as the perpetrator of a similar charged crime in which that accomplice participated (*see e.g. People v Whitley*, 14 AD3d 403, 405 [2005], *lv denied* 4 NY3d 892 [2005]; *People v Palmer*, 263 AD2d 361, 362 [1999], *lv denied* 93 NY2d 1024 [1999], *cert denied* 528 US 1051 [1999]). Thus, the common features of the charged and uncharged thefts here can hardly be said to convincingly prove a unique or distinctive modus operandi.

Moreover, unlike the prior trailer thefts, the evidence regarding the charged theft fails to support the majority's hypothesis that inside information was used. At trial, the People did not even allege that defendant used inside information to identify what trailer would be stolen. In addition, the testimony at trial indicated that four Xerox trailers had been dropped at the site of the theft, that two were unlocked because they were empty, that the seal on the third trailer, which contained copier toner, had been broken and that only the fourth contained valuable equipment. These facts suggest that the perpetrator checked the trailers and discovered which would be the best one to steal, rather than demonstrating the use of inside information.

Essentially, the People have demonstrated only that defendant specializes in a particular type of crime. Since there are more differences than similarities among these trailer thefts, and the method used was common to the type of crime, defendant's modus operandi cannot be said to be "sufficiently unique to make the evidence of the uncharged crimes 'probative of the fact that he committed the one charged' " (*People v Beam*, 57 NY2d 241, 251 [1982], quoting *People v Condon*, 26 NY2d 139, 144 [1970]; *see People v Pittman*, 49 AD3d 1166, 1167 [2008]; *People v Daniels*, 216 AD2d 639, 639-640 [1995]; *People v Sanchez*, 154 AD2d 15, 24 [1990]; *cf. People v Allweiss*, 48 NY2d 40, 47-48 [1979]; *People v Nuness*, 192 AD2d 960, 962 [1993], *lv denied* 82 NY2d 723 [1993]; *People v Neu*, 126 AD2d 223, 225 [1987], *lv denied* 70 NY2d 652 [1987]). Thus, the limited probative value of the uncharged thefts is outweighed by their potential for prejudice in suggesting a criminal propensity (*see People v Alvino*, 71 NY2d 233, 241-242 [1987]; *People v Allweiss*, 48 NY2d at 47; *People v Daniels*, 216 AD2d at 639-640). Since the other evidence tending to establish that defendant committed the crimes charged was not overwhelming, we cannot conclude that the error was harmless. Accordingly, we would reverse defendant's judgment of conviction and direct a new trial.

Mercure, J.P., concurs.

Ordered that the judgment is affirmed.