■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT S. GORGHAN, Appellant. [787 NYS2d 178]—

Lahtinen, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered June 13, 2001, upon a verdict convicting defendant of the crimes of rape in the first degree, sodomy in the first degree, sexual abuse in the first degree (three counts) and criminal possession of a weapon in the fourth degree.

While the conduct to which the victim was allegedly subjected by defendant is abhorrent and her story in such regard is moving, most of that story involves conduct for which defendant was not indicted and thus was not on trial. The prosecution nevertheless spent an inordinate amount of time eliciting evidence about those purported uncharged crimes and otherwise repeatedly straying beyond the bounds of permissible conduct. Under such circumstances, settled precepts point to the conclusion that defendant was deprived of a fair trial.

Defendant began a long-term relationship with the victim's mother in the late 1970s and they resided together from the early 1980s. The victim, who was born in October 1975, was ostensibly told and believed that defendant was her biological father. He was not, however, her biological father. In April 1997, when the victim was 21 years old, defendant allegedly subjected her to various nonconsensual sexual conduct, including sexual intercourse. Two years later, in April 1999, the victim contacted police regarding the incident. In her statement to police, the victim alleged that defendant had, in fact, started sexually abusing her when she was eight years old and continued such conduct until the alleged incident in April 1997.

The ensuing investigation included, among other things, taping telephone conversations between defendant and the victim, searching defendant's residence pursuant to a search warrant

and questioning defendant about the allegations. In October 1999, defendant was indicted for the crimes of rape in the first degree, sodomy in the first degree, sexual abuse in the first degree and criminal possession of a weapon in the fourth degree, all allegedly occurring "sometime during the month of April, 1997." The weapon charge in the indictment related to an unlicensed handgun found during the search of defendant's residence and, before the trial, the People successfully moved to have the indictment amended to change the date of that alleged crime to May 5, 1999.

Prior to trial, the prosecutor sought permission to introduce various evidence regarding defendant's purported uncharged criminal conduct and bad acts. Following a *Ventimiglia* hearing, County Court excluded part of the evidence the People sought to offer, but ruled that the victim could testify about the alleged sexual abuse she suffered from the time she was eight years old until she reached the age of majority. A jury convicted defendant of all the charged crimes and he was sentenced to concurrent terms of incarceration, the longest of which was 12½ to 25 years. Defendant appeals.

Defendant asserts an assortment of errors in a lengthy brief. We turn first to his contention that he was denied a fair trial by the prosecutor's conduct. If a prosecutor's conduct during a trial, viewed in its entirety, creates an atmosphere of substantial prejudice so as to deprive a defendant of a fair trial, reversal is required (*see People v Calabria*, 94 NY2d 519, 521-523 [2000]; *People v Levandowski*, 8 AD3d 898, 901 [2004]). Settled law directs that a prosecutor "may not refer to matters not in evidence or call upon the jury to draw conclusions which are not fairly inferrable from the evidence" (*People v Ashwal*, 39 NY2d 105, 109-110 [1976] [citations omitted]), act in a way that will "obfuscate the development of factual issues and sidetrack the jury from its basic mission of determining the facts relevant to guilt or innocence" (*People v Alicea*, 37 NY2d 601, 605 [1975]), or "seek to lead the jury away from the issues by drawing irrelevant and inflammatory conclusions which have a decided tendency to prejudice the jury against the defendant" (*People v Ashwal, supra* at 110).

Here, errors permeated the People's opening statement, presentation of proof and continued into summation. For example, when addressing the force element of the sex crimes in her opening statement, the prosecutor concluded that aspect of her statement, in which she had repeatedly referred to force, with the comment, "[h]e placed his hands on her . . . forcibly, *and* he possessed a weapon, a .357 Magnum caliber Dan Wesson

arms revolver unlicensed *on that day*" (emphasis added). There was, however, never any allegation that defendant used a gun when committing the charged sex crimes nor was there any contention defendant even possessed the gun in April 1997. In fact, the People had successfully amended the indictment to allege the gun crime occurred, not in 1997 when the sex crimes allegedly occurred, but in 1999. This was an improper attempt to create an inference—devoid of factual support—that the gun was relevant to the issue of force. Moreover, prior to the opening statement, the prosecutor removed the victim's mother from her list of potential witnesses, but then told the jury of certain testimony the mother would give. There was no good faith basis for believing the mother would testify as represented to the jury. In addition, the jury was improperly told that defendant originally had also been charged with incest and details were provided of other certain bad acts (that had not been brought up in the *Ventimiglia* hearing), which implied stalking and eavesdropping by defendant. Considerably more time was spent in the opening statement discussing and detailing uncharged crimes and bad acts than the crimes for which defendant was on trial. Defendant's motion for a mistrial at the close of the prosecutor's opening statement was denied.

During the presentation of proof, and despite County Court's admonition that no evidence aimed at bolstering the victim's testimony as to uncharged acts would be permitted, the People repeatedly elicited such evidence. Evidence of hymenal tears and herpes was presented, but never tied to the charged crime as represented it would be. Restrictions placed by County Court on testimony about defendant's vasectomy scar and skin tags on his buttocks were disregarded. The victim's testimony regarding uncharged acts of defendant was significantly longer than the testimony about the charged crimes.

Before summation by counsel, County Court reminded the prosecutor to keep her comments consistent with the court's *Ventimiglia* ruling. The prosecutor failed to do so, resulting in several sustained objections. In addition, the prosecutor provided her opinion as to the credibility of witnesses and repeatedly commented upon matters not in evidence, even attempting to relate her own out-of-court discussions with the victim. A much larger portion of the summation focused on the uncharged conduct than the charged crimes. The prosecutor attempted to use the testimony of an expert as a basis to comment in summation upon child sexual abuse accommodation syndrome. However, when that witness testified, County Court had specifically ruled the evidence was admissible only for rape

trauma syndrome and not for child sexual abuse accommodation syndrome.

While not every error resulted in a timely objection, the record is replete with objections as well as motions for a mistrial in response to various conduct of the prosecutor. Under the circumstances, County Court's frequent curative instructions could not "assure elimination of the harm caused" (*People v Levandowski, supra* at 901). In summary, defendant, while not entitled to a perfect trial, was entitled to a fair one (*see People v Smith*, 97 NY2d 324, 330 [2002]; *People v White*, 57 NY2d 129, 135 [1982]). A review of this record reveals a pervasive pattern by the prosecutor of pushing beyond accepted boundaries on key issues and in a fashion prejudicial to a fair trial. Reversal and a new trial are required (*see People v Petrucelli*, 44 AD2d 58, 58-59 [1974]).

Since there must be a new trial, we comment briefly upon other relevant issues. A new *Ventimiglia* hearing is necessary. While some evidence of prior abuse may be admissible in a case of this nature (*see People v Cook*, 93 NY2d 840, 841 [1999]; *People v Higgins*, 12 AD3d 775, 777-778 [2004]), a more detailed analysis of the probative value versus potential for prejudice of the uncharged crimes and bad acts must be conducted than was done here. Evidence of the uncharged crimes and bad acts should be closely controlled so that those acts do not again eclipse the reason for the trial, i.e., the crimes with which defendant is charged (*see People v Singh*, 186 AD2d 285, 287-288 [1992]). The misdemeanor weapons charge (if it survives a speedy trial challenge) should be severed from the other charges under the circumstances of this case, particularly in light of the improper comment about that charge made by the prosecutor in the trial under review. We have reviewed and find unpersuasive defendant's challenges to the search warrant and the sufficiency of the indictment. The remaining issues are academic.

Crew III, J.P., Carpinello, Mugglin and Rose, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Rensselaer County for a new trial and such other proceedings as may be appropriate.