(August 31, 2006)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER M. WLASIUK, Appellant. [821 NYS2d 285]—

Cardona, P.J. Appeals (1) from a judgment of the County Court of Chenango County (Sullivan, J.), rendered January 17, 2003, upon a verdict convicting defendant of the crime of murder in the second degree, and (2) by permission, from an order of said court, entered April 5, 2005, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

During the morning of April 3, 2002, the Chenango County Sheriff's Department responded to the scene of a one-car motor vehicle accident at Guilford Lake in Chenango County. Upon their arrival, sheriff's deputies found defendant standing at the top of an embankment and saw the taillights of a vehicle submerged in the lake. Defendant reported that his wife (hereinafter the victim), whose body was later found on the lake floor near the vehicle, had been driving when a deer darted into the road, causing her to swerve and plunge the vehicle into the lake. However, the ensuing investigation contradicted defendant's version of events, leading to suspicion that defendant had staged the accident after suffocating the victim at their home. Defendant was indicted for the crime of intentional murder in the second degree. Following a jury trial, defendant was convicted as charged and sentenced to 25 years to life in prison. Defendant appeals from the judgment of conviction and from County Court's subsequent denial of his CPL 440.10 motion to vacate the judgment.

In our view, the cumulative effect of a litany of errors deprived defendant of a fair trial. In reaching that conclusion, we acknowledge that some of the errors now complained of were not properly objected to at trial and that several of the errors, if viewed in isolation, might be subject to harmless error analysis. Nonetheless, we are mindful of our "overriding responsibility" to ensure that "the cardinal right of a defendant to a fair trial" is respected in every instance (*People v Crimmins*, 36 NY2d 230, 238 [1975]). Accordingly, under the particular circumstances presented, we must reverse defendant's conviction and remit for a new trial (*see People v LaDolce*, 196 AD2d 49, 52-53 [1994]; *People v Butler*, 185 AD2d 141, 145 [1992]; *People v Balkum*, 94

AD2d 933, 933 [1983]; *People v Dowdell*, 88 AD2d 239, 248 [1982]).

We begin by addressing evidentiary matters; specifically, the People's introduction of proof of defendant's prior bad acts (*see generally People v Molineux*, 168 NY 264, 297-305 [1901]). At trial, the People's often-articulated prosecutorial theory was that the victim's murder was the culmination of an escalating pattern of domestic violence perpetrated by defendant. In furtherance of that theory, the People's pretrial *Molineux* proffer sought to permit the testimony of 24 individuals who were prepared to testify as to defendant's acts and threats of violence against the victim and others. To justify the introduction of such evidence, the People alleged that it was admissible as proof of defendant's "motive, intent[,] identity, commonplace scheme, modus operandi and to show the intent that this defendant had to kill the deceased." Furthermore, the People alleged that particular parts of the proffer were admissible as proof of the victim's state of mind, the state of the parties' marriage and background information.[1] County Court initially reserved decision on the People's submission, expressing its intent to adjudicate the admissibility of particular testimony as it arose at trial and cautioning that it would not permit incompetent or cumulative evidence. Thereafter, however, without additional discussion on the record and in the absence of definitive advance rulings from the court, several of the individuals listed in the *Molineux* proffer testified during the People's direct case. Some of the witnesses attested to acts of violence that they observed defendant commit against the victim, while others recounted statements made by the victim that also tended to reveal prior domestic violence by defendant.

"Whether evidence of prior crimes may be admitted under the *Molineux* rule is [initially] a question of law, not discretion" (*People v Alvino*, 71 NY2d 233, 242 [1987] [citations omitted]; *accord People v Chaney*, 298 AD2d 617, 618 [2002], *lv dismissed and denied* 100 NY2d 537 [2003]). While there is a premise that evidence of uncharged crimes is inadmissible (*see People v Resek*, 3 NY3d 385, 390 [2004]; *see generally People v Lewis*, 69 NY2d 321, 325 [1987]), such evidence may be used during the prosecution's case-in-chief if it is probative of some legally relevant and material issue aside from the defendant's propensity to commit the crime charged (*see People v Hudy*, 73 NY2d 40, 54-55 [1988]). Once this threshold determination is made as a

---

1. We note that the People expressly disclaimed reliance on the "*Sirois*rule" articulated in *Matter of Holtzman v Hellenbrand* (92 AD2d 405 [1983]; *see generally People v Geraci*, 85 NY2d 359 [1995]).

matter of law, the trial court has the discretion to admit the evidence after balancing its probative worth against its potential for undue prejudice (*see People v Alvino, supra* at 242). Indeed, "[i]n deciding whether to admit evidence of prior criminal or immoral conduct . . . , the trial court must take special care to ensure not only that the evidence bears some articulable relation to the issue, but also that its probative value in fact warrants its admission despite the potential for prejudice" (*People v Santarelli,* 49 NY2d 241, 250 [1980]).

Here, a complete and exacting *Molineux* analysis is all the more crucial. In an increasing number of domestic violence cases, proof of the defendant's prior abusive conduct against the victim has been held permissible upon the ground that it is relevant to establish the defendant's motive, intent or identity or provides relevant "background" information which assists the jury in understanding the relationship between the defendant and the victim (*see e.g. People v James,* 19 AD3d 616, 616 [2005], *lv denied* 5 NY3d 807 [2005]; *People v Gorham,* 17 AD3d 858, 860-861 [2005]; *People v Poquee,* 9 AD3d 781, 782 [2004], *lv denied* 3 NY3d 741 [2004]; *People v Vega,* 3 AD3d 239, 247-249 [2004], *lv denied* 2 NY3d 766 [2004]; *People v Bierenbaum,* 301 AD2d 119, 150 [2002], *lv denied* 99 NY2d 626 [2003], *cert denied* 540 US 821 [2003]; *People v Kovacs,* 255 AD2d 457, 458 [1998]). Certainly, however, the fact that proof of prior domestic violence has been held admissible in a number of other homicide cases (*see e.g. People v Bierenbaum, supra* at 147) cannot, in and of itself, form a basis for admissibility in every subsequent case. Rather, admissibility under *Molineux* must be adjudged on a case-specific basis (*see generally People v Ventimiglia,* 52 NY2d 350 [1981]; *see e.g. People v Laviolette,* 307 AD2d 541, 542-543 [2003], *lv denied* 100 NY2d 643 [2003]).

Given the premise of inadmissibility of prior bad act evidence (*see People v Resek, supra* at 390), in assessing the probative worth of prior acts of domestic violence, the fact that the evidence may be relevant to an issue aside from the defendant's criminal propensity is not alone sufficient unless it is also *material* to the People's case (*see People v Ely,* 68 NY2d 520, 530 [1986]; *People v Allweiss,* 48 NY2d 40, 47 [1979]). For instance, even if a defendant's prior acts of domestic abuse, whether alone or in conjunction with other evidence (*see e.g. People v Setless,* 289 AD2d 708, 710 [2001], *lv denied* 98 NY2d 640 [2002]), could be demonstrably linked to his or her motive to commit the charged crime (*see e.g. People v Mees,* 47 NY2d 997, 998 [1979]), where the People present considerable other proof of a defendant's various financial and personal motivations, the probative

worth of the prior bad act evidence on the topic of motive may be diminished (*see People v Ely, supra* at 529-530).

In this case, after much—but not all—of the testimony at issue, County Court instructed the jury that the proof was not to be taken as evidence of defendant's violent propensities and was only relevant to his motive and/or intent.[2] However, there is no record evidence that County Court attempted to measure the probative value of the evidence by ascertaining the necessity of its presentation or whether it was cumulative of other evidence presented by the People (*see id.*). Notably, this record also does not support the conclusion that County Court engaged in a substantive balancing of the probative value of the evidence against its potential to unduly prejudice defendant (*see People v Chaney, supra* at 618-619; *see generally People v Ventimiglia, supra* at 361-362). Although, as noted above, County Court did hold a *Molineux/Ventimiglia* hearing, the arguments therein were exclusively addressed to the proffered testimony's relevance to an issue other than defendant's propensity and there was no discussion concerning its probative worth or possible prejudice to defendant (*compare People v Gorham, supra* at 860). Accordingly, upon this record, we cannot conclude that evidence of defendant's prior acts of domestic violence was properly admitted (*see People v Gorghan*, 13 AD3d 908, 911 [2004], *lv dismissed* 4 NY3d 798 [2005]).

Furthermore, we take this opportunity to reiterate that, where inordinate attention is focused on an accused's prior abusive conduct against the victim, there exists potential that a jury will afford such evidence undue weight, regardless of the quality of other proof implicating the accused in the charged crime (*see People v Lewis*, 69 NY2d 321, 325 [1987], *supra*; *People v Ventimiglia, supra* at 359; *People v Condon*, 26 NY2d 139, 143 [1970]; *see also People v Richardson*, 137 AD2d 105, 108-109 [1988]). The potential for prejudice may have been further exacerbated by the repeated presentation of prior bad act evidence through multiple witnesses (*see People v Stanard*, 32 NY2d 143, 147-148 [1973]). Accordingly, we caution that—on any retrial— "[e]vidence of the uncharged crimes and bad acts should be closely controlled so that those acts do not . . . eclipse the reason for the trial, i.e., the crimes with which defendant is charged" (*People v Gorghan, supra* at 911).

Next, we also find error in the introduction of hearsay evidence as part of the People's case-in-chief. In that regard, we

---

2. In addition to the cautionary instructions provided after certain of the individual testimony, County Court reiterated its *Molineux* instruction during its final charge to the jury.

are primarily concerned with the admission of several diaries and letters penned by the victim that generally recounted her concerns about the troubled state of her relationship with defendant.[3] The eight writings, some of which were undated and some of which preceded the victim's death by more than six years, were admitted into evidence in their entirety and excerpts were read to the jury. Although County Court instructed the jury that the contents of the victim's writings were not to be used as proof of defendant's propensity to commit the charged crime, the hearsay aspects of the diary entries and letters do not appear to have been addressed.

A murder victim's diary entries are "clear hearsay" and have been held to be inadmissible proof of an accused's motive (*People v Steiner*, 30 NY2d 762, 763 [1972]). Nonetheless, the People now contend that the victim's writings were not admitted for the truth of their content, but to show the state of mind of the victim.[4] While we agree with this contention to a certain extent—discrete portions of the victim's writings clearly portray the victim's thoughts and concerns regarding her marriage and her intent to leave defendant once the opportunity presented itself—the People's claim overlooks a salient point. The state of mind of the victim is only relevant if it can be shown that defendant was aware of same. Only under such circumstances would proof of the victim's mental processes and, in particular, her plan to forsake defendant with the couple's children assist in establishing a motive for the killing (*see People v Martinez*, 257 AD2d 410, 411 [1999], *lv denied* 93 NY2d 876 [1999]). Here, however, while several of the victim's letters were addressed to defendant, making him potentially aware of their contents, the same cannot be said of the victim's diaries. Nonetheless, in the absence of affirmative proof that defendant was aware of the contents of the victim's compositions, we cannot conclude that

**3.** In addition to the victim's diaries and letters, some of the testimony admitted in the People's case pursuant to *People v Molineux* (168 NY 264 [1901], *supra*) contained hearsay aspects which were not addressed by County Court. Although our disposition of this case renders extensive discussion of this point unnecessary, we note that the admissibility of such evidence must be independently adjudged pursuant to the rules governing the use of hearsay testimony, regardless of its admissibility under *Molineux* (*see e.g. People v Harvey*, 270 AD2d 959, 960 [2000], *lv denied* 95 NY2d 835 [2000], *lv dismissed* 95 NY2d 853 [2000]; *People v Matthews*, 148 AD2d 272, 277 [1989], *lv dismissed* 74 NY2d 950 [1989]; *People v Irizarry*, 126 AD2d 982, 983 [1987], *affd* 70 NY2d 816 [1987]).

**4.** While the People also seek to invoke the "[r]esidual [e]xception" to the hearsay rule (*see* Fed Rules Evid rule 807), we note that no such exception exists under New York law (*see People v Nieves*, 67 NY2d 125, 131 [1986]; *see also* 33 NY Jur 2d, Criminal Law § 1910).

the evidence was properly admitted. Additionally, even if it could be established that defendant was aware of the content of the victim's writings, we note that the diaries and letters contain individual statements which do not, on their face, reflect the victim's state of mind and, in fact, contain inflammatory and largely irrelevant assertions which should not have been presented to the jury (*see People v Steiner, supra* at 763).

Also impeding defendant's right to a fair trial was the manner in which a report prepared by the Michigan State Police (hereinafter the STAR report) was presented to the jury. The STAR report, which concerned a submerged motor vehicle accident study that the department conducted in 1991 involving 31 tests on 20 passenger vehicles and a school bus, documented the submersion characteristics of the vehicles and reported the department's findings on the topics of escape/rescue and accident reconstruction. Although the STAR report was referred to by two of the People's witnesses, it was primarily addressed by Chenango County Deputy Sheriff Richard Cobb, who had previously undergone approximately four weeks of advanced accident reconstruction training, but had never personally investigated an underwater accident. Cobb began his testimony by recounting his own on-scene investigation and depicting the scene via trial exhibits. After indicating that he received a copy of the STAR report three weeks after the incident in question, Cobb testified as to the report's findings and his own opinion that defendant's version of events was inconsistent with what the STAR report indicated would happen in a submersion accident. Later during Cobb's testimony, a half-hour videotape prepared in conjunction with the STAR report was admitted into evidence and played for the jury. At that time, after acknowledging that the tape was hearsay, County Court instructed the jury as follows: "I'm allowing you to watch this tape solely for the basis of understanding that this tape was one of the bases used by [Cobb] in making his report. This tape should not be taken by you as any evidence in chief as to any point in this particular case. Simply treat it as background information that [Cobb] used in his investigation to make his report."

It is well settled that " 'hearsay testimony given by [an] expert . . . for the limited purpose of informing the jury of the basis of the expert's opinion and not for the truth of the matters related' is admissible" (*People v Wright*, 266 AD2d 246, 247 [1999], *lv denied* 94 NY2d 831 [1999], quoting *People v Campbell*, 197 AD2d 930, 932-933 [1993], *lv denied* 83 NY2d 850 [1994). However, a prerequisite to admission of such out-of-court mate-

rial is a showing by the proponent that it is reliable as a basis for expert opinion in the given field (*see People v Goldstein*, 6 NY3d 119, 126-127 [2005]; *Hambsch v New York City Tr. Auth.*, 63 NY2d 723, 726 [1984]; *People v Sugden*, 35 NY2d 453, 460-461 [1974]). Moreover, however reliable the evidence is shown to be, it may not be the "principal basis" for an opinion on the ultimate issue in the case, and may only form a link in the chain of data which led the expert to his or her opinion (*Borden v Brady*, 92 AD2d 983, 984 [1983]; *see Hinlicky v Dreyfuss*, 6 NY3d 636, 645-646 [2006]).

Here, despite the fact that the STAR report was admitted as a basis for Cobb's opinion, his testimony concerning same remains problematic. First, there was no testimony establishing a proper foundation for admission of the STAR report as a basis for Cobb's opinion, such as an indication in the record that the report is of a kind reasonably relied on by experts in any given field or that the information and methodology depicted in the report is reliable.

Of even greater significance is the fact that the STAR report clearly formed the principal basis for Cobb's opinion. Cobb repeatedly testified that defendant's account of the accident was "inconsistent with" the STAR report and intimated that the report was the definitive authority on submerged vehicle accidents. Rather than testifying that the STAR report—as well as facts adduced at trial and his own experience as an accident reconstructionist—formed the basis for his opinion, Cobb essentially served as conduit for the testimony of the report's authors by dictating the report's contents, and then offered his opinion that, to the extent that defendant's story was contrary to the report, it was an impossibility. In our view, such testimony exceeded the bounds of permissible opinion testimony.

Finally, we find merit to defendant's challenge to certain conduct of the prosecutor. Briefly stated, the prosecutor repeatedly expressed a personal opinion concerning the merits of particular evidence (*see People v Bailey*, 58 NY2d 272, 277 [1983]), disparaged defendant, characterized his testimony and that of his witnesses as "lies" (*see People v Levandowski*, 8 AD3d 898, 900 [2004]; *compare People v McCombs*, 18 AD3d 888, 890 [2005]) and maligned defense counsel and his arguments (*see People v McReynolds*, 175 AD2d 31, 31-32 [1991]). In our view, these transgressions caused substantial prejudice to defendant and, in conjunction with the errors previously discussed, effectively deprived defendant of a fair trial (*see People v Russell*, 307 AD2d 385, 386-387 [2003]; *People v Tarantola*, 178 AD2d 768, 769-770 [1991], *lv denied* 79 NY2d 954 [1992]; *see also People v World*, 157 AD2d 567, 568 [1990]).

In light of our disposition of this matter, defendant's additional claims are academic.

Mercure, Spain, Carpinello and Kane, JJ., concur. Ordered that the judgment and order are reversed, on the law and as a matter of discretion in the interest of justice, and matter remitted to the County Court of Chenango County for a new trial.