*995 OPINION OF THE COURT
Martin E. Smith, J.
On September 30, 2005, the above defendant was indicted by a Tioga County grand jury and charged with murder in the second degree in violation of Penal Law § 125.25 (1), a class A-I felony. The indictment alleges that defendant intentionally caused the death of his wife, Michele Harris, on or about September 11, 2001. Michele Harris was the defendant’s wife.
Defendant had filed an omnibus motion seeking, inter alia, an examination of the stenographic minutes of the grand jury proceeding for the purpose of determining whether the evidence before the grand jury was legally sufficient to support the charge contained in the indictment and whether the legal instructions given to the grand jury were sufficient, and sought dismissal of the indictment for the insufficiency of the evidence or for other defects in the grand jury proceedings. (See, CPL 210.20, 210.35.)
By decision and order dated June 30, 2006 that motion was denied (Honorable Vincent Sgueglia, J.). Thereafter, a trial date was scheduled for September 11, 2006. On July 27, 2006 the People served defense counsel with over 12,000 pages of Rosario material, including the transcript of the grand jury proceedings. The trial was adjourned to afford defense counsel sufficient time to review the materials. A January 2007 date was set.
On or about August 24, 2006 the defendant filed a motion seeking permission to reargue/renew his prior motion for inspection and dismissal of the indictment. The People responded on September 20, 2006, arguing that there was no valid basis upon which the defendant should be allowed a second opportunity to have the indictment dismissed under CPL 210.20 or 210.35.
This motion was argued on September 22, 2006. The court addressed not only the question of whether it should reconsider the motion, but also the merits of the argument the defendant now made for dismissal of the indictment. The court granted the motion to reargue and reserved decision on the defendant’s motion to dismiss under CPL 210.20 and 210.35.
It appears that on Friday, December 15, 2006, at the conclusion of an unrelated hearing in the matter, the court, apparently as a courtesy to counsel, called counsel into chambers and advised both parties that it was granting defendant’s motion dismissing the indictment pursuant to section 210.35 (5) of the Criminal Procedure Law. This does not appear on the record, and, according to motion papers now before this court, there ap *996 pears to be a dispute over exactly what was said by the attorneys and the court at that meeting. Not in dispute is that the court advised counsel that it was issuing a decision dismissing the indictment based upon the grand jury presentation. The record does reflect that the court did not sign and file any decision on that day.
On Monday, December 18, 2006, before the court filed its written decision dismissing the indictment (attached hereto and made a part hereof), the District Attorney filed a motion by way of an order to show cause requesting the court recuse itself based upon an “appearance of impropriety.” This application was filed only after the prosecutor had learned on the previous Friday that the court was about to grant defendant’s motion to dismiss the indictment. It was an apparent effort to avoid that decision by the court. This will be discussed further in this decision.
The application was argued in open court on Monday, December 18, 2006. At argument, the prosecutor clearly stated that it was the People’s position that recusal should occur because “there is an appearance of impropriety here.” (Transcript of appearance, Dec. 18, 2006, at 18.) He also stated to the court, “I am not accusing you of anything” (id.). The court adamantly denied and refuted the People’s assertions that it had by its conduct created any “appearance of impropriety.” It recused itself, however, because the prosecutor had made sworn allegations in support of his application, pitting his oath of office against that of the court. This, in itself, the court found, created the possibility of an appearance of impropriety, however baseless.
On December 19, 2006 this court was assigned to preside over this case. On December 21, 2006 defendant filed a motion by way of an order to show cause requesting simply that this court effectuate, sign, and file the decision and order of the Honorable Vincent Sgueglia dismissing the indictment pursuant to CPLR 9002. Defendant also sought, in that application, an order precluding the District Attorney from presenting the matter to another grand jury, as an appropriate sanction for the People’s application for an order of recusal.
The People filed their response in opposition to defendant’s application on or about December 26, 2006, which was received by this court on January 2, 2007. That response argues that Justice Sgueglia’s decision of June 30, 2006 denying defendant’s original motion to inspect and dismiss constitutes the “law of *997 the case,” and further, that defendant’s motion to renew/reargue should be denied as untimely under CPLR 2221 (d) and (e).
The defendant’s motion was not untimely. As defendant correctly points out, the motion was filed with the court within 30 days after defense counsel received the grand jury transcripts on or about July 27, 2006. CPL 255.20 (3) states the court “must entertain and decide on its merits, at any-time before the end of the trial, any appropriate pre-trial motion based upon grounds of which the defendant could not, with due diligence, have been previously aware.” Additionally, the court has the inherent power to review its own order when it is provided with new information. That new information here was the defendant’s motion itself as well as the Appellate Division’s decision in People v Wlasiuk (32 AD3d 674 [3d Dept 2006]), upon which, in part, it relies.
While the legal sufficiency of the evidence before the grand jury cannot be argued on appeal after a conviction occurs at trial pursuant to CPL 210.30 (6), defects in a grand jury proceeding under section 210.35 (5) can be raised at any time. Indeed, in People v Huston (88 NY2d 400 [1996]) the Court of Appeals reversed the defendant’s conviction after trial for two murders after reviewing the grand jury presentation and finding that prosecutorial misconduct and inadmissible evidence before the grand jury had impaired those proceedings to such an extent that prejudice to the defendant may have, and in fact did, occur. Given that an appellate court may review and dismiss an indictment on the grounds raised here, even following a trial conviction, common sense, the interests of judicial economy and justice dictate that the trial court be afforded the opportunity to do the same, in advance of trial. Thus, the People’s contention that defendant’s motion is untimely or that the court’s prior decision of June 30, 2006 constitutes the law of the case is rejected.
Defendant’s contention that this court should simply perform a “ministerial” act and effectuate the decision dismissing the indictment by Justice Sgueglia under CPLR 9002 is more troublesome. CPLR 9002 provides that:
“The death, sickness, resignation, removal from or expiration of office or other disability or legal incapacity of a judge following his verdict, report, decision or determination of a motion or special proceeding in any matter in a civil judicial proceeding shall not effect its validity. Unless otherwise provided by rule of the chief administrator of the *998 courts, any other judge of the same court may, on the application of a party, give effect to such verdict, report, decision or determination and make and sign an appropriate order or judgment based thereon, which shall have the same effect as if it had been made by the judge upon whose verdict, report, decision or determination it is based.” (Emphasis added.)
This limitation to civil judicial proceedings is in contrast to CPLR 2221, upon which the defense originally relied for its motion to reargue/renew, which by its terms is not limited to civil proceedings. Thus, in this court’s view, section 9002 cannot apply to this criminal proceeding.
More problematic, however, is whether or not the unsigned, unfiled written decision of Justice Sgueglia constitutes the “law of the case.” In People v Broome (151 AD2d 995 [1989]), the defendant moved to preclude identification evidence because he had not been served with a proper written notice pursuant to CPL 710.30 (1) (b). The justice who heard that motion ruled in favor of defendant and precluded that evidence at trial. The case was transferred to another justice for trial and two days prior to trial that justice conducted a Wade hearing over defendant’s objection and did not suppress that evidence. Defendant was convicted. On appeal, the Fourth Department reversed and remanded the case for trial noting that the motion justice’s “determination that identification testimony could not be used at trial constituted the law of the case and was binding on [the trial justice]” (Broome at 995 [emphasis added]). In People v Nenni (261 AD2d 900, 900-901 [1999]) the Fourth Department remitted the case to Orleans County Court for further proceedings stating:
“County Court erred in denying defendant’s suppression motion without conducting a hearing. Defendant’s omnibus motion, which was argued before a different Judge, contained sworn statements that the evidence seized should be suppressed because the police lacked probable cause to stop the vehicle in which he was a passenger. The People denied defendant’s allegations and indicated that they were prepared to proceed with a hearing (see, CPL 710.60 [3], [4]; People v Youngblood, 210 AD2d 948). The judge before whom the motion was argued orally granted defendant’s request for a hearing, and thus his decision constitutes the law of the case *999 ... In any event, the successor Judge, who was not present for oral argument, was precluded from deciding the motion (see, Judiciary Law § 21; People v Cameron, 194 AD2d 438; People v Hooper, 22 AD2d 1006)” (emphasis added).
Judiciary Law § 21 states that a “judge . . . shall not decide or take part in the decision of a question, which was argued orally in the court, when he was not present and sitting therein as a judge.” People v Cameron (194 AD2d 438 [1st Dept 1993]) provides a focus for the issue now before this court. In that case defendant filed a motion to suppress physical evidence resulting in a full evidentiary hearing. The justice before whom that hearing was held took ill and could not decide the motion.
“A new Judge was assigned to the matter and, without notice to defendant, rendered a decision on the motion. This was in contravention of Judiciary Law § 21, which dictates that a Judge (other than on an Appellate Division or the Court of Appeals) ‘shall not decide or take part in the decision of a question, which was argued orally in the court, when he was not present and sitting therein as a judge.’ It has been made clear that this applies not only to oral arguments of motions, but to the taking of testimony, and violation is a defect so fundamental that it cannot be waived (Michel v Michel, 31 AD2d 313).
“A contrary result is not required by the decisions of this Court in People v Cannon (168 AD2d 356, lv denied 77 NY2d 904) and People v Lewis (71 AD2d 7). In each of those cases, the newly substituted Justice was not assigned to decide an issue of law that was argued before the first Justice before the illness, but only to preside over a jury deliberation and verdict” (Cameron at 438-439 [emphasis added]).
Thus, the issue before this court is whether or not the unsigned decision of Justice Sgueglia should simply be given effect by signing and filing his decision and order dismissing the indictment, or whether this court should undertake its own examination of the grand jury proceedings and issue its own decision thereon without regard to the decision of Justice Sgueglia. The question is particularly troublesome because defendant’s motion to reargue/renew his original motion to inspect the grand jury proceedings was argued on the record by the parties on *1000 September 22, 2006 with Justice Sgueglia reserving decision thereon, thus implicating Cameron and Judiciary Law § 21.
Patently clear from the record in this case is that the District Attorney filed his motion seeking recusal of the court only after being told that the court was dismissing the indictment pursuant to defendant’s motion to reinspect the grand jury proceeding. The prosecution’s motion was made 15 months after the defendant had been indicted, after, as defendant points out, other pretrial matters had been decided in favor of the prosecution. It would appear that the recusal motion was made only in an effort to forestall the court from issuing its decision dismissing the indictment. This suggests, of course, that parties to a lawsuit could prevent a court from issuing an adverse decision or order of which they became aware, as here, or which they feared were about to be issued, by simply filing a motion which contains sworn, though baseless, allegations, seeking a court’s recusal. Such tactics should not be tolerated.
In any event, the record in this case clearly demonstrates that the court announced to the parties its decision dismissing the indictment on Friday, December 15, 2006, and the court, during the argument on the People’s recusal application on December 18, 2006, referenced that very decision. The record also establishes that the court had prepared a written decision and order dismissing the indictment which was not filed by the court at the request of the prosecutor in his recusal application and again during oral argument thereon.
This court finds that Justice Sgueglia’s decision dismissing the indictment should be deemed filed before his recusal. Indeed, his unsigned decision was filed with the court clerk who provided a copy of it to this court. Under the facts of this case, as well as the available appellate decisions concerning the doctrine of “law of the case” such result is not only appropriate but compelling.
However, against the possibility that another court might reach the conclusion that Judiciary Law § 21 would preclude such a finding, this court undertook its own review of the grand jury proceeding, and reaches the same conclusion as Justice Sgueglia — the indictment must be dismissed. Although this court finds, as did Justice Sgueglia, that there was legally sufficient evidence presented to the grand jury to support the charge in the indictment, it also finds that the grand jury proceeding was defective within the meaning of CPL 210.35 (5).
In People v Huston (supra at 401-402) the Court of Appeals begins its analysis as follows:
*1001 “In our State justice system, the critical functions of investigating criminal activity and protecting citizens from unfounded accusations are performed by the Grand Jury, whose proceedings are conducted by the prosecutor alone, beyond public scrutiny. When the Grand Jury is subjected to improper influence and bias, its ability to discharge these essential functions fairly and reliably is necessarily undermined and the integrity of this constitutionally and historically independent institution impaired.
“In order to protect the liberty of all citizens, the Legislature requires that an indictment be dismissed where the Grand Jury proceeding is defective (see, CPL 210.20[1] [c]). Moreover, dismissal of the indictment is specifically compelled by statute when the integrity of the Grand Jury proceeding is impaired ‘and prejudice to the defendant may result’ (CPL § 210.35 [5]).
“The issue in this case is whether prosecutorial improprieties during presentation of defendant’s case to the Grand Jury rendered the resultant indictment fatally defective. Because the prosecutor’s misconduct was intentional, usurped the function of the Grand Jury and biased the proceedings against the defendant, it impaired the integrity of the Grand Jury proceedings and created a substantial risk of prejudice to the defendant. We therefore reverse . . . and dismiss the indictment, . . . with leave to the District Attorney to seek resubmission of the charges to another Grand Jury.”
Although the conduct of the prosecutor in this grand jury proceeding is not nearly as egregious as that of the District Attorney in Huston, nor as grounded in bad faith as that of the Huston prosecutor, it is equally clear that the admission into evidence of much, if not most of the inadmissible evidence here was done so intentionally.
“Under established law, not every elicitation of hearsay testimony renders an indictment defective and ‘[tiypically, the submission of some inadmissible evidence will be deemed fatal only when the remaining evidence is insufficient to sustain the indictment’ (id., citing People v Avant, 33 NY2d 265, 271 [1973] . . . ). Of course, in rare cases where the improprieties rise to the level of impairing the *1002 proceedings and creating a likelihood or real potential for prejudice, dismissal is required notwithstanding the sufficiency of the evidence (see . . . People v Adessa, supra at 686)” (People v Moffitt, 20 AD3d 687, 688-689 [2005]).
Such is the case here. Twenty-seven witnesses testified before this grand jury. Most of those witnesses were permitted, improperly, to offer their opinions as to the state of defendant’s marriage, and Michele Harris’ intent with regard to the divorce. They gave personal opinions concerning the defendant, his wife, his wife’s boyfriend, the defendant’s net worth, what type of employer the defendant was/is, his character, whether he had or did not have a propensity to commit the alleged crime, whether he was/is a “good” father or a good husband, and in contrast, whether Michele Harris was a good mother, or a good wife. One witness gave what amounted to his opinion as to whether the defendant committed the crime charged. Many witnesses were permitted to testify to hearsay statements made: by Michele Harris, by other witnesses who testified before the grand jury, but also by witnesses who did not testify before the grand jury. This included testimony by a police investigator that other police officers had determined that a particular item of personal property belonged to the defendant.
Ms. Harris’ attorney (in the divorce proceeding) was permitted to testify as to statements made to him by her which did not fall into any exception to the hearsay rule. He was allowed to testify about the state of his client’s marriage to the defendant, the status of the divorce action then pending. In this regard he offered his inadmissible opinion about several matters relating to that litigation. He was also permitted to testify concerning the content of the divorce file including allegations being made by Michele Harris in that action, none of which is admissible evidence.
That there was an action for divorce pending, filed by Michele Harris, was admissible as it goes to the issue of a possible motive on the part of the defendant to commit the alleged crime. Not permissible, however, was opinion testimony and speculation by Ms. Harris’ attorney regarding the divorce action and proceedings therein, particularly whether or not the defendant and his attorney were being forthright in their efforts to settle the divorce action. His testimony, amounting to nothing more than his opinion, as to how divorce actions generally proceed, was clearly inadmissible.
*1003 The amount of hearsay evidence offered by itself was overwhelming. In addition, the prosecution improperly offered evidence of prior conduct by the defendant (cf., People v Molineux, 168 NY 264 [1901] and its progeny) in an attempt to show defendant’s motive and “need to control” other persons in his life, as the prosecution explained to the court during argument on pretrial motions in this case.
The People’s theory of admissibility of this evidence must be examined by considering People v Bierenbaum (301 AD2d 119 [2002]). In that First Department case the defendant, a surgeon, was convicted of intentionally killing his wife, under the theory that he had murdered her, dismembered her body, and then deposited her remains in the Atlantic Ocean from a small plane he piloted. The case was based entirely on circumstantial evidence. At trial, the prosecution was permitted to offer evidence of statements made by the victim over the three years of their marriage regarding the “state” of their marriage. The Bierenbaum court essentially creates or recognizes an exception to the hearsay rule which would permit hearsay evidence in domestic violence prosecutions as “background information.”*
However, this court is constrained to follow Wlasiuk (supra). That case cautions:
“[W]here inordinate attention is focused on an accused’s prior abusive conduct against the victim, there exists potential that a jury will afford such evidence undue weight, regardless of the quality of other proof implicating the accused in the charged crime . . . The potential for prejudice may have been further exacerbated by the repeated presentation of prior bad act evidence through multiple witnesses” (Wlasiuk at 678).
The probative worth of such prior bad act evidence may indeed be diminished where the People present “considerable other proof of a defendant’s various financial and personal motivations.” (Wlasiuk, supra at 677.) Of course, any such hearsay evidence must in the first instance pass the reliability test set out in Nucci v Proper (95 NY2d 597 [2001]) applied in Bierenbaum.
This court finds that Mary Jo Harris’ grand jury testimony regarding an earlier incident in which Michele Harris telephoned *1004 her from a closet was admissible. Michele Harris’ telephone call under the circumstances constituted an “excited utterance.” Likewise, Mary Jo Harris’ testimony that the defendant had denied and later admitted that he had told his wife that if he were going to kill her he didn’t need a gun, that she would simply disappear, was also properly admitted.
But certain evidence was patently improper, as were the District Attorney’s comments to the grand jury regarding it. For example, the prosecutor allowed one witness to testify that he had taken a polygraph test before appearing in the grand jury (and ostensibly passed same or else he would not have appeared to testify). Then, when a grand juror asked whether defendant had also submitted to such a test, the prosecutor advised the grand jury that the witness could not properly answer that question but that there was a “story” that the prosecutor would relate to the grand jury when the case was concluded. This alone, in this court’s view, is an error of such proportion as to require dismissal of the indictment by itself, even if no other errors occurred in the presentation.
While charging the grand jury in this case the foreperson asked the prosecutor whether or not the grand jury was “hearing the entire story” in this case. The District Attorney then stated “[y]ou are hearing what I think is a sufficient case to indict the defendant. Are there more witnesses? Yes, there are more witnesses.” This statement was made after the grand jury had been advised that there was more to the story which the prosecutor would be happy to share with it at the conclusion of their proceedings. This error as well, in this court’s view, warrants dismissal of the indictment by itself and without regard to the other errors in the record.
The evidence presented to this grand jury was entirely circumstantial, both as to whether or not Michele Harris is in fact dead, and, if so, whether or not this defendant intentionally caused her death.
“It is simply not permissible for a District Attorney to inform grand jurors, who by statute and Constitution, have the unique responsibility to decide whether to vote an indictment, that as a matter of law the prosecutor has already determined that there is enough evidence to warrant that action. At the very least, such an instruction delivered to laypersons carries an unacceptably high risk that they might misconstrue or undervalue their own *1005 role in reviewing the evidence, or even assume that the defendant should be indicted.” (People v Batashure, 75 NY2d 306, 310 [1990].)
Based upon all of the above, the indictment in this case should be dismissed pursuant to CPL 210.35 (5) with leave to the District Attorney to apply for an order permitting resubmission of the charge to another grand jury.

 The Bierenbaum court did find that the hearsay statements in question met the reliability test set forth in Nucci v Proper (95 NY2d 597 [2001]).