■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK COPPOLO, Also Known as FRANK COPPOLLO, Appellant. [817 NYS2d 242]—

Judgment, Supreme Court, Bronx County (Harold Silverman, J.), rendered September 14, 2000, convicting defendant, after a jury trial, of robbery in the second degree and burglary in the second degree, and sentencing him to concurrent terms of five years, unanimously reversed, on the law, the judgment vacated and the matter remanded for a new trial.

The complainant alleged that defendant, a drug dealer whom she knew and who formerly had been in partnership with her boyfriend, entered her apartment with three other men and took property without her permission. Based upon this and other evidence, the prosecution's theory of the case was that the former drug-dealing partnership between the boyfriend and defendant provided the motive for taking the property. The defense theory was that defendant took the complainant's property, with her permission, to sell it for her, and that she falsely accused him of theft when her share of the proceeds was less than she anticipated.

At the pretrial hearing, the evidence failed to indicate any link between the taking of the complainant's property and defendant's former partnership with the boyfriend, hence the court rejected the prosecutor's request to offer such evidence at trial. Specifically, the court excluded as far more prejudicial than probative any evidence that defendant was a drug dealer

and any other such reference to drugs, including the word "drugs" in testimony the complainant intended to proffer that defendant had offered her $500 worth of drugs to drop her complaint. In addition, the prosecutor agreed not to introduce evidence revealing that defendant's arrest occurred at a meeting with his parole officer, and to so instruct her witness, the arresting officer.

At trial, there was significant evidence calling into question the complainant's version of events. For instance, the key defense witness, who was the complainant's friend, lived in her building and knew defendant, testified that the complainant told her that she gave defendant and his cohorts her television and stereo to sell, and reported a robbery only when they gave her less money than she expected. The witness also testified that she called defendant's wife on the day of the robbery and told her that the complainant admitted making up the robbery story, that complainant told the witness that she was loath to recant her "lie" (the robbery allegation), and that the witness later agreed to return from South Carolina in order to testify on behalf of defendant at the trial. Defendant's wife corroborated this testimony and also testified, inter alia, that the complainant called her around the time of defendant's arrest, made similar admissions, and promised to go to court and clear everything up. The complainant admitted that none of the men displayed a weapon, threatened or touched her during the robbery. She also admitted, on cross-examination, that contrary to her testimony, she reported the robbery not immediately, but four hours after it occurred.

During the cross-examination of the arresting officer, counsel sought to establish that defendant did not "put up a fight" when he was arrested. Notwithstanding the prior agreement that the officer would be instructed not to testify that the arrest occurred while the defendant was visiting his parole officer, the officer agreed that defendant had not "put up a fight" and immediately volunteered that defendant "was at his parole officer" at the time of the arrest. The court immediately ordered the statement stricken from the record; defense counsel moved for a mistrial. The court denied the motion and issued a curative instruction at defense counsel's request. Later, when the complainant was called as a rebuttal witness, the prosecutor asked her "[d]o you know where [a key defense witness] got the crack she smoked from?" Despite defense counsel's immediate objection, the complainant answered: "Frank Coppolo." This time the court ordered counsel into the robing room, where the prosecutor admitted that she intentionally elicited the testimony

that defendant was a drug dealer and argued that given the testimony of the key defense witness, the evidence was admissible. The court disagreed, stating that the prosecutor should have first requested permission to pose the question, and that the court would not have permitted her to ask the question. Defense counsel objected vigorously, citing the impropriety of the question, the prior reference to defendant's parole status, and the damage done to defendant's right to a fair trial. He moved for dismissal or a mistrial and, later, to strike the complainant's entire rebuttal testimony. The court denied all of the defense requests, noting that it would have granted a mistrial had the testimony occurred earlier in the proceedings, and gave the jury a "strong admonition" to disregard the improper testimony. The court later instructed the jury to disregard any question, or question and answer, where an objection was sustained and any testimony was stricken from the record. The court subsequently denied the defense motion to set aside the verdict.

Evidence of an uncharged crime is admissible where it would prove a material fact and its probative value is not outweighed by potential prejudice *People v Ventimiglia* (52 NY2d 350, 359-360 [1981]). When a prosecutor believes that the defense case may have opened the door to excluded evidence, she must first make application to the trial court before introducing such evidence, to avoid possible prejudice to the defendant (*see id.* at 362).

Even assuming that the arresting officer's quickness to volunteer that defendant had been arrested while meeting with his parole officer reflected no misconduct by the prosecutor, her subsequent conduct was inexcusable. As the court correctly stressed, the prosecutor had no right to assume that the defense had opened the door to the testimony the prosecutor elicited on rebuttal to the effect that defendant had supplied the defense witness with crack. Given the prejudice to defendant from this improper conduct, and the prejudicial impact of the testimony concerning defendant's parole officer, we are not willing to consider whether, or the extent to which, the court's limiting instructions dissipated the prejudice. Even if we agree with the prosecution that there was overwhelming evidence of guilt, which we do not, the potential for prejudice was substantial and the interests of justice warrant a new trial. Concur—Nardelli, J.P., Williams, Catterson, McGuire and Malone, JJ.