■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JASON PARKER, Also Known as DARRYL GLOVER, Appellant. [854 NYS2d 397]—

---

Judgment, Supreme Court, New York County (Budd G. Goodman, J.), rendered October 18, 2005, convicting defendant, upon his plea of guilty, of grand larceny in the fourth degree, and sentencing him, as a second felony offender, to a term of 2 to 4 years, unanimously affirmed. Judgment, same court and Justice, rendered November 17, 2005, convicting defendant, upon his plea of guilty, of fraudulent accosting, and sentencing him to time served, unanimously affirmed. Judgment, same court and date (Marcy L. Kahn, J., at hearing; Budd G. Goodman, J., at jury trial and sentence), convicting defendant of grand larceny in the fourth degree, and sentencing him, as a second felony offender, to a term of 1½ to 3 years, unanimously affirmed.

Defendant's convictions arose out of a scheme in which he convinced victims that they could purchase computers at low prices for cash. In one such incident, defendant approached Eric Toral at the corner of 44th Street and Eighth Avenue. The two men then conversed for "a couple of minutes" about the purchase of two Macintosh G-4 laptop computers. Toral later discussed the proposed transaction with defendant in a series of telephone conversations, and it was agreed that Toral would pay $2,200 for the two laptops. Toral arranged to take delivery from defendant at a McDonald's at 56th Street and Eighth Avenue in Manhattan. However, defendant did not appear at the prearranged location and persuaded Toral to meet him at the corner of 57th Street and Eighth Avenue. As defendant approached, Toral was grabbed from behind and restrained in a bear hug by an accomplice while an envelope containing the cash was removed from his jacket pocket by a second accomplice. Toral then watched the three men run off together towards Central Park.

At trial, the People sought to introduce evidence in connection with defendant's conviction of a similar crime for the avowed purpose of establishing his identity by demonstrating the similarity in modus operandi. Defendant opposed the People's motion and offered to concede the issue of identity. The trial court declined to accept defendant's concession and permitted testimony of the uncharged crime, delivering limiting instructions to the jury.

On appeal, defendant contends that the prejudice from the introduction of evidence of the uncharged crime outweighed its probative value. The People argue that defendant did not offer a sufficient concession of his identity to render introduction of the *Molineux* evidence unnecessary.

In the absence of inquiry into the extent of the concession defendant was willing to make, its sufficiency cannot be assessed. In any event, the People have not demonstrated that the proffered concession would have failed to conclusively establish defendant's identity so as to warrant introduction of evidence of the uncharged crime (*People v Robinson*, 68 NY2d 541, 548 [1986]; *see People v Condon*, 26 NY2d 139, 142 [1970] [identity exception to *Molineux* rule unavailable *"where the identity of defendant is established by other evidence and is not truly in issue"*]; *People v Sanchez*, 154 AD2d 15, 24 [1990] [repeated offers to concede identification, defendant to testify to sexual contact]; *cf. People v Alvino*, 71 NY2d 233, 245 [1987] [evidence admitted to prove intent, which was not conceded]). Nor did limiting instructions eliminate the prejudice to defendant (*see Sanchez*, 154 AD2d at 22-23).

Toral had ample opportunity to view defendant at their first encounter while they discussed the transaction and was able to identify defendant in a lineup. Toral testified that he spoke with defendant on the telephone on numerous occasions and was able to recognize his voice. Shortly after the theft, Toral obtained defendant's home address from the telephone number recorded on his cell phone by consulting a reverse directory on the internet. Finally, the People introduced a record of calls placed by Toral to defendant's home. Thus, there was substantial evidence that defendant was the other party to the sham transaction, the details of which were established by the victim's testimony, and defendant's identity was not actually in issue (*Condon*, 26 NY2d at 142).

While we conclude that the trial court erred in admitting the challenged evidence, the error was harmless in view of the overwhelming proof of defendant's guilt (*People v Crimmins*, 36 NY2d 230, 241 [1975]). We discern no significant probability that the jury would have acquitted defendant if the *Molineux* evidence had been excluded (*id.*; *cf. People v Coppolo*, 30 AD3d 207, 209 [2006]).

The only material inconsistency in Toral's testimony identified by defendant is readily explained by the record. Toral originally reported the incident at the 79th Precinct in Brooklyn (because of its proximity to defendant's home), then at the 13th Precinct in Gramercy Park (his own neighborhood) and, finally, at the Midtown North Precinct (in which the crime was committed). On a single police report, the location of the crime was recorded as the southwest corner of Fifth Avenue and Broadway, not 57th Street and Eighth Avenue. However, the officer who took that information worked in the Brooklyn precinct house

and conceded his unfamiliarity with Manhattan. Another witness for the People testified that there is no such intersection because Fifth Avenue and Broadway are avenues that run essentially parallel to each other until they eventually meet at 23rd Street. Thus, there is abundant evidence upon which to conclude that the location stated on the report made at the 79th Precinct was simply the result of human error.

Other asserted deficiencies in the evidence are even less compelling. On summation, defendant relied on the challenged testimony from the victim of the uncharged crime that he was merely duped out of his money without the use of any force, urging the jury to reject Toral's testimony that force was used against him. Acquittal on the second-degree robbery count, however, is irrelevant to conviction on the fourth-degree grand larceny count, a crime that does not require the use of force (Penal Law § 155.30). Whether Toral entertained any suspicion about the source of the goods being offered for sale is likewise irrelevant to defendant's guilt. Finally, it was hardly unreasonable for Toral to forgo reporting the crime for an hour and a half so that he could supply the police with defendant's address.

We reject defendant's contention that the lineup identification should be suppressed. At the time he was placed in a lineup and identified by Toral, defendant was in lawful custody in connection with a similar theft. The victim of that crime recognized defendant as he walked along the street and pointed him out to a police officer who pursued defendant and placed him under arrest. Although the arresting officer was not called to testify, sufficient information to conclude that there was probable cause for the arrest was introduced through the testimony of the detective investigating the instant matter (*People v Parris*, 83 NY2d 342, 346 [1994]; *see also People v Ketcham*, 93 NY2d 416, 420-421 [1999]). Since defendant was in lawful custody for one crime, he could be placed in a lineup in connection with another (*People v Whitaker*, 64 NY2d 347 [1985], *cert denied* 474 US 830 [1985]; *People v Crawford*, 221 AD2d 462 [1995], *lv denied* 87 NY2d 920 [1996]).

We also reject defendant's contention that the trial court should have charged petit larceny as a lesser included offense of grand larceny. While defendant is correct that the crime of grand larceny cannot be committed without also committing the lesser offense (*Matter of Eric R.*, 213 AD2d 310, 311-312 [1995]), viewing the evidence in the light most favorable to defendant (*People v Martin*, 59 NY2d 704, 705 [1983]), it affords no reasonable basis to warrant instructing the jury on petit larceny (CPL 300.50 [1], [2]; *People v Glover*, 57 NY2d 61, 63 [1982]). Toral's

testimony that $2,200 was taken from his person is unimpeached, and there is simply no evidence that the amount involved was less than $1,000 so as to warrant an instruction on the lesser crime. Nor can defendant complain that the evidence of the amount involved in the sham transaction was insufficient. When the prosecutor attempted to elicit testimony of the amount withdrawn by the victim from an ATM machine, the court sustained the objection interposed by defendant, characterizing this line of inquiry as irrelevant.

We have considered defendant's remaining contentions and find them unavailing. There is no basis for reversal of either conviction predicated on defendant's guilty plea. Concur—Lippman, P.J., Tom, Williams and Acosta, JJ.