[983 NYS2d 562]

Tʜᴇ Pᴇᴏᴘʟᴇ ᴏꜰ ᴛʜᴇ Sᴛᴀᴛᴇ ᴏꜰ Nᴇᴡ Yᴏʀᴋ, Respondent, v Gᴇʀᴀʟᴅ DᴇGᴇʀᴏʟᴀᴍᴏ, Appellant.

First Department, April 17, 2014

## APPEARANCES OF COUNSEL

*Richard M. Greenberg, Office of the Appellate Defender*, New York City (*Joseph M. Nursey* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Hope Korenstein* and *Eleanor J. Ostrow* of counsel), for respondent.

## OPINION OF THE COURT

Acosta, J.

At issue in this case is the propriety of the trial court's decision to admit evidence of a different crime, under *People v Molineux* (168 NY 264 [1901]), where evidence of intent was not ambiguous (assuming the jury believed the complainant), and there was insufficient indicia of similarity to fall within the "common scheme or plan" exception. Defendant was charged with robbery in the second degree and related offenses in connection with a December 26, 2009 incident in which he allegedly sprayed complainant David Cushman in the face with mace, and stole a ring he had previously negotiated to purchase from

Cushman. On June 14, 2010, defendant was charged with grand larceny in the second degree and related offenses in connection with an incident in which he allegedly stole rings worth more than $90,000 from complainant Mary Nguyen by tricking her into placing the rings in a pouch and then replacing them with others before leaving the pouch with her. Over defendant's objection, the court allowed the People to introduce evidence of defendant's theft of Nguyen's rings as *Molineux* evidence at defendant's trial for the Cushman robbery. We find that the court erred in allowing Nguyen's testimony to be admitted and that the error requires reversal and a new trial.

In 2007, David Cushman spent $30,000 on an engagement ring. When the engagement was called off, Cushman attempted to resell the ring to a jewelry store. Unsatisfied with the price he was offered, Cushman advertised the ring for sale on Craigslist in June 2009. Defendant responded to the ad, and after speaking on the phone with Cushman several times over the next two weeks, defendant asked Cushman to show the ring to him and his girlfriend. Cushman met defendant in a parking lot adjacent to the docks where defendant said his girlfriend kept her boat. Defendant and Cushman waited for defendant's girlfriend for about 15 minutes, but she never showed up, and they left. Approximately two weeks later, defendant asked Cushman to meet him at Maimonides Hospital, where, defendant claimed, he was visiting his sick mother. Cushman arrived at around 7:30 p.m., but when defendant did not show up, Cushman left him a voicemail telling him to "leave [him] alone."

In August 2009, defendant sent a text message to Cushman that he would have the money to buy the ring that week, but subsequently sent a message that he did not have the money. Finally, in December 2009, defendant contacted Cushman again about buying his ring, and promised to pay a non-refundable $3,000 deposit. Defendant asked Cushman to meet his "daughter" at a jewelry store to have the ring appraised. Cushman followed defendant into the vestibule of an apartment building. According to Cushman, while they waited for the elevator, defendant asked him if he had the ring. When Cushman removed the ring from a box, defendant maced Cushman in the face. As Cushman struggled to breathe, defendant pushed him against the wall, ripped the ring from his hand, and ran out the door. Cushman managed to grab onto defendant's jacket outside and was able to subdue him until the police arrived.

According to defendant, however, it was Cushman who sprayed a substance into defendant's eyes and then hit the top

of his head with a bat or some other blunt object. Police were called to the scene, where they separated the two men and arrested defendant.

Pursuant to the court's *Molineux* ruling, Mary Nguyen testified that in mid-September 2009, she met with a man, who she said was defendant and who called himself "Joey," to sell him her wedding rings. He told her that he was a jewelry dealer and that his mother was in the hospital. The two met around lunchtime in Nguyen's apartment. About two weeks later, they met again at lunchtime in a restaurant. Defendant told Nguyen that his buyer for the rings would meet them at the restaurant, but nobody showed up.

About a week and a half later, defendant and Nguyen met again at the same restaurant. Nguyen's boyfriend followed them to the restaurant and sat alone at the bar. A woman invited by defendant also attended the meeting, which lasted about half an hour. Defendant told Nguyen that he wanted to introduce her to his buyer as his girlfriend, and he asked to carry her rings in a zippered black pouch "to make it look really legitimate." Nguyen gave defendant her rings, which he put in his pouch. In the restaurant, they met with another woman, and defendant showed the woman a diamond ring that was not Nguyen's. A few minutes later, defendant excused himself to go to the bathroom, leaving his pouch on the table. When defendant sent her a text message saying that his stomach felt "awful," Nguyen grabbed the pouch, which proved to contain pieces of costume jewelry, but not her rings. Nguyen's boyfriend checked the bathroom, but it was empty. Nguyen called the police, but she never recovered her rings.

In its final charge, the court instructed the jury that the People contended that the evidence that defendant had stolen rings from Nguyen was "so similar" to the charged incident that it constituted a "common plan or scheme," and that the evidence was "offered on the issue of defendant's intent to steal in the instant case."

It is well established that "[e]vidence of similar uncharged crimes has probative value, but as a general rule it is excluded for policy reasons because it may induce the jury to base a finding of guilt on collateral matters or to convict a defendant because of his past" (*People v Alvino*, 71 NY2d 233, 241 [1987]). Exceptions to the rule were established in *People v Molineux* (168 NY 264 [1901]; *see People v Resek*, 3 NY3d 385, 390 [2004] ["under our *Molineux* jurisprudence, we begin with the premise

that uncharged crimes are inadmissible and, from there, carve out exceptions"]). *Molineux* evidence must tend to establish a legally relevant and material issue, and its probative value must outweigh its potential prejudice to the defendant (*Alvino*, 71 NY2d at 242). At issue in this case are two of the exceptions addressed in *Molineux*: evidence offered on the issue of intent and evidence of "common plan or scheme" (160 NY at 297, 305).

■ Where intent is at issue but cannot be readily inferred from the commission of the act itself, evidence of prior criminal acts may be used to establish it (*Alvino*, 71 NY2d at 242). Where, however, proof of the act demonstrates that the defendant acted with the requisite state of mind, *Molineux* evidence should not be admitted (*id.*). Here, proof of defendant's actions is sufficient to demonstrate that he acted with the requisite intent. Spraying someone in the face with mace, grabbing the person's ring and running can only indicate an intent to steal the ring. If the jury believed Cushman's testimony, then it would have to infer that defendant intended to steal the ring from him.

Citing to *People v Ingram* (71 NY2d 474 [1988]), the dissent correctly notes that *Molineux* evidence may be used "[w]hen defendant's criminal intent cannot be inferred from the commission of the act or when defendant's intent or mental state *in doing the act* is placed in issue (*id.* at 479 [emphasis added]). But as noted above, if the jury believed complainant's version, defendant's intent is obvious from the commission of the act. There is nothing in the way defendant *did the act* (assuming complainant's version) that would place the intent to steal at issue. In this regard, I disagree with the dissent's assertion that "the chain of events leading up to the robbery created ambiguities as to defendant's intent" (dissenting op at 33). On the contrary, the People's evidence left no ambiguity as to defendant's intent.* As the dissent notes, "There is ample case law to support the proposition that uncharged crime evidence may be

* In *People v Ingram* (71 NY2d 474 [1988]) and *People v Alvino* (71 NY2d 233 [1987]), the defendants' intent was ambiguous because, among other things, even accepting the People's witnesses' testimony as true, it was possible that the defendants were telling the truth (*see also People v Mobley*, 176 AD2d 211, 211 [1st Dept 1991] ["defendant's own theory of the case was that proof of intent to steal . . . was equivocal"]). In *People v Hernandez* (71 NY2d 233 [1987]), decided with *Alvino*, where the defendant was charged with selling and possessing a controlled substance, "[e]vidence of uncharged crimes was legally admissible on the People's case to prove that defendant possessed drugs because defendant's possession of the drugs, standing alone, did not provide a clear indication of whether he held the drugs for sale or for his own use" (71 NY2d at 245). Uncharged crimes were also admissible on the sale

used to support testimony that otherwise might be unbelievable or suspect" (dissenting op at 34, quoting *People v Steinberg*, 170 AD2d 50, 74 [1991], *affd* 79 NY2d 673 [1992]). However, that is not the case here.

 Nor was Nguyen's testimony admissible under the common plan or scheme exception, which requires that "there exist[ ] a single inseparable plan encompassing both the charged and the uncharged crimes" (*People v Fiore*, 34 NY2d 81, 85 [1974]). "There must be 'such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations' " (*id.* [citation omitted]). Indeed, the Court of Appeals noted that "courts have been particularly cautious in permitting proof of uncharged criminal acts to establish a common scheme or plan" (*id.*). Evidence that is merely indicative of a modus operandi is not sufficient. "[A] *modus operandi* alone is not a common scheme; it is only a repetitive pattern" (*id.* at 87). What is generally required is evidence of "uncharged crimes committed in order to effect the primary crime for which the accused has been indicted" (*id.* at 85).

In this case, the similarities between the presently charged robbery of Cushman and the robbery testified to by Nguyen— that both incidents involved expensive jewelry listed on Craigslist and that phone conversations were had—evidence only "a repetitive pattern" (*Fiore*, 34 NY2d at 87). The alleged robbery of Nguyen was not committed to effect the robbery of Cushman (*id.* at 85).

 The error in admitting Nguyen's testimony was not harmless. Nguyen's testimony comprised a significant portion of the People's case. The prosecutor emphasized its significance in both his opening statement and his summation. For instance, in his opening, the prosecutor briefly summarized Cushman's allegations and then told the jury that

> "December 26, 2009 was not the first time that this
> defendant ran a scam on someone posting an ad on

---

charges because, "[f]aced with the strong likelihood that the jury would infer from the evidence, and particularly his possession of 21 glassines, that he was a seller," the defendant testified that he was a drug addict and a petty thief and introduced prior convictions to prove his defense that the glassines were for his personal use (*id.*). As the Court noted, "By doing so, he reframed the dispute before the court and affirmatively attempted to convince the jury of his innocence not just in this instance but because his entire history was inconsistent with guilt" (*id.* at 247). Thus, "[t]he People were entitled to rebut that testimony by evidence of prior crimes suggesting otherwise" (*id.*).

Craig's list [sic] for expensive jewelry. And so, another witness that I anticipate that you will hear from is Mary Nguyen.

"She will also walk you through her interaction with this defendant. Like a David Cushman experience, she placed on Craig's list [sic] for the sale of her two expensive rings due to her impending divorce."

The prosecutor then detailed the ways in which Nguyen's alleged interactions with defendant were like David Cushman's interactions with him, and introduced the theme that defendant was a person who committed multiple Craigslist scams.

In summation, the prosecutor argued:

"What the credible evidence shows is that on December 26th 2009, this defendant, right there, tried to swindle David Cushman out of his $35,000 engagement ring . . . Just like the swindle with Mary Nguyen, this defendant just so happened to bring fake jewelry with him on the day when he completed this crime after months of contact with David Cushman. Just like he swindled with [sic] Mary Nguyen, this defendant's actions were planned, they were calculated, and they were morally . . . bankrupt."

Later, he said:

"Perhaps the most compelling testimony that you heard of this defendant's guilt came when Mary Nguyen testified before you. If you had any doubt whosoever [sic] that the defendant intended to steal David Cushman's engagement ring on December 26th, 2009, certainly Mary Nguyen's testimony makes very clear that this defendant scammed her the very same way he tried to scam David Cushman."

The comment that "the most compelling testimony" as to defendant's guilt of the charged crime against Cushman was Nguyen's testimony about an unrelated incident demonstrates that the prosecutor was well aware of the devastating nature of this evidence. Thus, notwithstanding the strength of the other evidence, it cannot be said that the error was harmless.

In view of our conclusion, we do not reach defendant's remaining contentions.

Accordingly, the judgment of the Supreme Court, New York County (Thomas Farber, J.), rendered February 8, 2011, convicting defendant, after a jury trial, of robbery in the second degree, and sentencing him to a term of $5^{1}/_{2}$ years, followed by five years' postrelease supervision, should be reversed, on the law, and the matter remanded for a new trial.

ANDRIAS, J. (dissenting). Defendant stands convicted of robbery in the second degree in connection with an incident in which he allegedly sprayed complainant David Cushman in the face with mace and stole a diamond ring that Cushman had advertised for sale on Craigslist for $35,000. Before trial, defense counsel indicated that defendant wished to testify, and he suggested during the *Molineux* hearing that the defense would be that after defendant and Cushman fought, Cushman fabricated the robbery accusation against him. At trial, the defense was that Cushman, out of frustration and anger, assaulted and maced defendant after defendant had strung him along for several months with respect to the purchase of the ring, which gave Cushman a motive to fabricate the robbery accusation to avoid being charged with assault. In furtherance of this defense, before the *Molineux* evidence was admitted, defense counsel asked Cushman on cross-examination if he had become frustrated with defendant during their dealings and whether he had maced defendant. Thereafter, defendant testified that he had "[n]o intention of robbing" Cushman and that it was Cushman who sprayed defendant with mace and assaulted him.

The majority reverses the conviction on the ground that the trial court erred in admitting, under *People v Molineux* (168 NY 264 [1901]), evidence of a prior larceny in which defendant allegedly stole rings worth more than $90,000 from complainant Mary Nguyen that Nguyen had advertised on Craigslist.* In so ruling, the majority adopts the position that there can be no ambiguity as to defendant's intent because it is inherent in his actions "[i]f the jury believed Cushman's testimony" (majority op at 27). However, in this classic *Molineux* case, where defendant presented a different version of the events, the People were entitled to introduce evidence on their direct case anticipatory

---

* Defendant was charged with grand larceny in the second degree and other larceny-related counts in the Nguyen case. When the People moved to consolidate the two cases, defendant opposed on the ground that he wished to testify in this case, whereas he intended to exercise his Fifth Amendment rights in the Nguyen case. The court conducted consolidated pretrial hearings, but severed the cases for trial.

of the defense that defendant would advance at trial that tended to disprove his claim that he had no intention of stealing the diamond ring from Cushman. Intent is an element of the crime that defendant explicitly and repeatedly placed in issue, and the trial court properly found that the probative value of the Nguyen larceny evidence exceeded any potential for prejudice. Accordingly, I dissent, and would affirm the judgment.

"[T]he familiar *Molineux* rule states that evidence of a defendant's uncharged crimes or prior misconduct is not admissible if it cannot logically be connected to some specific material issue in the case, and tends only to demonstrate the defendant's propensity to commit the crime charged" (*People v Cass*, 18 NY3d 553, 559 [2012]). "On the other hand, evidence relevant to prove some fact in the case, other than the defendant's criminal propensity, is not rendered inadmissible simply because it may also reveal that the defendant has committed other crimes" (*People v Allweiss*, 48 NY2d 40, 46-47 [1979]). Thus, evidence of a defendant's uncharged crimes or prior misconduct is admissible where it is directly relevant to a material issue in the case, other than the defendant's propensity to commit the crime charged, and its probative value outweighs its potential for undue prejudice to the defendant (*Cass*, 18 NY3d at 560).

> "Determining whether the probity of such evidence exceeds the prejudice to the defendant is a delicate business, and as in almost every case involving *Molineux* or *Molineux*-type evidence, there is the risk that uncharged crime testimony may improperly divert the jury from the case at hand or introduce more prejudice than evidentiary value. Yet this case-specific, discretionary exercise remains within the sound province of the trial court, which is in the best position to evaluate the evidence" (*People v Morris*, 21 NY3d 588, 596-597 [2013] [internal quotation marks and citations omitted]; *see also People v Gillyard*, 13 NY3d 351, 355 [2009] ["The balancing of probative value against potential prejudice is entrusted to the trial court's discretion"]).

"A commonly used, though nonexhaustive, list names five so-called *Molineux* exceptions—i.e., purposes for which uncharged crimes might be relevant: 'to show (1) intent, (2) motive, (3) knowledge, (4) common scheme or plan, or (5) identity of the defendant' " (*People v Arafet*, 13 NY3d 460, 465 [2009], quoting *People v Alvino*, 71 NY2d 233, 242 [1987]). "When defendant's

criminal intent cannot be inferred from the commission of the act or when defendant's intent or mental state in doing the act is placed in issue, . . . proof of other crimes may be admissible under the intent exception to the *Molineux* rule" (*People v Ingram*, 71 NY2d 474, 479 [1988]; *People v Alvino*, 71 NY2d at 242-243 [other conduct may be admissible evidence "when proof of the act falls short of demonstrating that the defendant acted with a particular state of mind and where proof of a prior act is relevant to that issue"]).

"Robbery is defined as 'forcible stealing' (Penal Law § 160.00); larceny is an element of robbery" (*People v Pagan*, 19 NY3d 91, 96 [2012]). "A person steals property and commits larceny when, with the intent to deprive another of property or to appropriate the same to himself . . . he wrongfully takes, obtains or withholds such property from an owner thereof" (Penal Law § 155.05 [1]). Thus, to convict a defendant of robbery, the People must prove that he or she acted with the intent to take property from the owner thereof (*People v Green*, 5 NY3d 538, 543 [2005]).

The majority finds that defendant's criminal intent can readily be inferred from Cushman's description of the crime, and that *Molineux* evidence should not be admitted to bolster the uncertain credibility of the complaining witness. However, this is not your garden variety robbery where someone sticks a gun in the victim's face, and the jury either believes the complainant's version of the facts or does not. Defendant's larcenous scheme took place over many weeks and whether defendant was a legitimate buyer who intended to flip the diamond ring and earn a quick profit, whether he planned to steal the ring from Cushman by trickery, and whether he planned to take the ring by force are all ambiguities in the People's evidence. The fact that at the last second defendant impulsively panicked and assaulted Cushman and allegedly seized the ring does not eliminate the fact that defendant put his larcenous intent at issue through his cross-examination of Cushman and his own extensive testimony about his real intent or lack thereof. Defendant testified that he, not Cushman, was the victim, and his final acts, as described by Cushman, in and of themselves might not have been enough to resolve any doubts in the jurors' minds about his intent to steal. Thus, the court properly admitted evidence of the uncharged larceny committed by defendant under similar circumstances as probative of defendant's larcenous intent, a contested element of the crime (*see People v Mobley*, 176 AD2d 211 [1st Dept 1991], *lv denied* 78 NY2d 1128 [1991]).

Particularly, there was a significant number of common factors in both crimes, including that defendant had multiple phone conversations and meetings with each victim in the same neighborhood in Manhattan to arrange his supposed purchase of the jewelry they advertised on Craigslist, told both victims that his mother was in the hospital when he needed an excuse for leaving a meeting, arranged meetings with them at which a promised third party never showed up, and displayed fake jewelry to them. Although the evidence that defendant took Nguyen's rings by sleight of hand does not tend to establish that his meeting with Cushman was for the purpose of robbery, it was probative of defendant's larcenous intent, and tended to dispel the notion that there was an innocent explanation for defendant's conduct (*see People v Chi Yuan Hwang*, 2 AD3d 245, 246 [1st Dept 2003], *lv denied* 2 NY3d 738 [2004]; *People v Taylor*, 71 AD3d 1467, 1468 [4th Dept 2010], *lv denied* 15 NY3d 757 [2010] ["evidence was also relevant to rebut the defense that defendant had a legitimate reason for his presence in the office where the instant crimes occurred"]). Indeed, what could be more relevant than the Nguyen larceny to explain that defendant's extensive interactions with Cushman were in furtherance of his intent to steal Cushman's ring, rather than the typical arm's-length negotiations between a true buyer and seller?

The majority ignores the facts that whether defendant actually committed the acts complained of is an issue in the case and that the Nguyen larceny tended to disprove defendant's version of events, including his claim that he had no intent to steal the ring from Cushman and that he was the true victim. As set forth above, the chain of events leading up to the robbery created ambiguities as to defendant's intent, and the earlier incident tended to place the trial evidence in context (*see People v Martinez*, 53 AD3d 508 [2d Dept 2008], *lv denied* 11 NY3d 791 [2008]; *People v Bourne*, 46 AD3d 1101, 1103 [3d Dept 2007], *lv denied* 10 NY3d 762 [2008]; *People v Figueroa*, 195 AD2d 477 [2d Dept 1993], *lv denied* 82 NY2d 753 [1993]). Defendant testified that he, not Cushman, was the victim, and his final acts, as described by Cushman, in and of themselves might not have been enough to resolve any doubts in the jurors' minds about defendant's intent to steal (*see People v Wilson*, 100 AD3d 1045, 1047-1048 [3d Dept 2012], *lv denied* 22 NY3d 998 [2013] [the defendant put his intent in issue, during cross-examination of a witness, by attempting to portray the witness as the true drug dealer]).

Further,

> "[e]vidence of uncharged crimes is not barred merely because the People are able to establish their case without it; they are entitled to present all the admissible evidence available to them . . . There is ample case law to support the proposition that uncharged crime evidence may be used to support testimony that otherwise might be unbelievable or suspect" (*People v Steinberg*, 170 AD2d 50, 73, 74 [1st Dept 1991], *affd* 79 NY2d 673 [1992]; *see also People v Galarza*, 59 AD3d 365, 366 [1st Dept 2009], *lv denied* 12 NY3d 853 [2009]).

While the majority believes that this is not such a case, defendant was severely beaten by Cushman, who was also handcuffed and arrested when the police arrived at the scene.

Nor should the evidence be excluded merely because it was detrimental to defendant. "If the evidence has substantial probative value and is directly relevant to the purpose—other than to show criminal propensity—for which it is offered, the probative value of the evidence outweighs the danger of prejudice and the court may admit the evidence" (*People v Cass*, 18 NY3d at 560). Here, the probative value of the evidence outweighed any potential for undue prejudice, which was minimized by the court's suitable limiting instructions, which at all times made clear that the *Molineux* evidence was admitted as proof of defendant's larcenous intent (*see People v Morris*, 21 NY3d at 598). The fact that the larceny victim cried while testifying is irrelevant to the propriety of the court's ruling, and her demeanor did not independently warrant a mistrial. Finally, even if the court's admission of the *Molineux* evidence was error, it was harmless since there is no significant probability that the jury would have acquitted defendant if the *Molineux* evidence had been excluded (*see People v Parker*, 50 AD3d 330, 332 [1st Dept 2008], *lv denied* 10 NY3d 962 [2008]), given, among other things, the strength of the other evidence and defendant's testimony in which he conceded his willingness to be untruthful when it benefitted him.

FRIEDMAN, J.P., and DEGRASSE, J., concur; ANDRIAS and FREEDMAN, JJ., dissent in a separate opinion by ANDRIAS, J.

Judgment, Supreme Court, New York County, rendered February 8, 2011, reversed, on the law, and the matter remanded for a new trial.